UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL RANZY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3334 |
| | § | |
| EXTRA CASH OF TEXAS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is defendants' motion to compel arbitration and stay action pending arbitration and defendants' motion to dismiss plaintiff's first amended complaint or, in the alternative, for a more definite statement. Dkts. 15, 16. Also pending before the court is plaintiff's motion to amend her complaint. Dkt. 20. For the reasons set forth below, defendants' motion to compel arbitration is DENIED. Additionally, plaintiff's motion to amend her complaint is GRANTED. Defendants' motion to dismiss is, therefore, DENIED AS MOOT.

**Background**

In September 2008, plaintiff Cheryl Ranzy borrowed $500.00 in the form of a payday loan from defendant Extra Cash of Texas. Dkt. 9 at 3. In return, Ranzy wrote a post-dated check in the amount of $625.00 to cover the principal and interest due on the loan; the check was to be cashed on Ranzy's next payday. *Id.* Under the terms of the loan, if Ranzy was not able to pay the $625.00 at the next payday, she could renew the loan by making an interest payment of $125.00 for every month she needed to extend the loan. *Id.* at 4. Unable to pay back the loan in full, Ranzy ended up making the $125.00 renewal payments each month until February or March of 2009. *Id.* At that

point, Ranzy became ill and was unable to work for a short period of time. *Id.* As a result, Ranzy was not able to make any further payments to Extra Cash. *Id.*

In an attempt to collect on the loan, Extra Cash called Ranzy several times to find out when Ranzy would be making her next payment. *Id.* Extra Cash also sent Ranzy a letter in May, 2009, demanding payment. *Id.* When these attempts to collect on the loan did not succeed, a "collector" began calling people close to Ranzy—her husband, her elderly mother, and her supervisor—and representing to them that the caller was with a third-party "check fraud investigations department" and he was investigating a fraudulent check Ranzy had written to Extra Cash. *Id.* at 4–5. In the fall of 2009, Ranzy was ultimately able to contact the collector, who turned out to be defendant Edmundo Tijerina. *Id.* at 5–6. "Eddy" as Ranzy knew him, told her that she had an outstanding balance of $125.00 on the loan and needed to pay it off, or she would be prosecuted for check fraud. *Id.* at 5–6. Ranzy obtained a cashier's check that same day and took her payment to Extra Cash. *Id.* at 6. When Ranzy received her receipt for payment, however, it still reflected a principal balance of $500.00. *Id.*

When Ranzy initially borrowed the money from Extra Cash, she signed a promissory note (the "Note") and a Credit Services Organization Agreement (the "Arbitration Agreement") for the loan. Dkt. 15 at 2. Both the Note and the Arbitration Agreement provided:

> AGREEMENT TO ARBITRATE ALL DISPUTES: You and we agree that any and all claims, disputes, or controversies between you and us and/or the lender, any claim by either of us against the other and/or the lender (or the employees, officers, directors, agents or assigns of the other or the lender) and any claim arising from or relating to your Credit Services and Loan Application, any LOC [Letter of Credit] issued by the CSO [Credit Services Organization] on your behalf, the loan documents that govern your obligations for any loan that you obtain or have previously obtained or later obtain, this CSO Agreement, this Agreement to Arbitrate All Disputes, collection of any loan or loans, collection of any LOC that the CSO issued on your behalf, or alleging fraud or misrepresentation, whether under the common law or pursuant to federal, state or local statute, regulation, or ordinance, including all disputes as to the matters, subject to arbitration, or otherwise, shall be resolved by

      binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed. This agreement to arbitrate all disputes shall apply no matter by whom or against whom the claim is filed. Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, or on the World Wide Web at www.arb-forum.com, by telephone at 800-474-2371, or at "National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405-0191." Your arbitration fees may be waived by the NAF in the event you cannot afford to pay them. The cost of a participatory hearing, if one is held at your or our request, will be paid for solely by us if the amount of the claim is $15,000 or less. Unless otherwise ordered by the arbitrator, you and we agree to equally share the costs of a participatory hearing if the claims is for more than $15,000 and less than $75,000. Any participatory hearing will take place at a location near your residence. This arbitration agreement is made pursuant to a transaction involving interstate commerce. It shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16. Judgment upon the award may be entered by any party in any court having jurisdiction.

Dkt. 15, Ex. 1 at 2; Ex. 2 at 2–3.

      Ranzy brought this suit against defendants Extra Cash, Tijerina, and Cynthia Salinas alleging violations of the Texas Finance Code, the Federal Debt Collection Practices Act, and RICO, and a request for a preliminary, and ultimately a permanent, injunction against defendants preventing them from engaging in any further illegal lending and collection activity. Dkt. 9 at 7–14. Based upon the arbitration clause included in both the Note and Arbitration Agreement, defendants ask the court to compel arbitration and to stay the action pending arbitration. Dkt. 15. Ranzy contends, however, that the arbitration agreement is not enforceable because (1) the arbitration agreement was obtained by fraud; and (2) performance of the arbitration agreement is now impossible since the NAF no longer arbitrates consumer matters. Dkt. 17 at 2. Defendants additionally ask the court to dismiss the claims under Rule 12(b)(6), or in the alternative, for a more definite statement. Dkt. 16. In response, Ranzy asks the court to allow her to amend her complaint to cure any possible deficiencies, as well as add additional parties and claims. Dkt. 20.

**Analysis**

**A.      The Arbitration Agreement**

*1.      Standard of Review*

Federal policy favors arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability ." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983) (citations omitted). Courts use a two-step inquiry to determine whether an arbitration clause is enforceable as it relates to the dispute at hand. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). First, courts must determine whether the parties agreed to arbitrate the dispute. And second, the court must examine "'whether legal constraints external to the parties' agreement foreclose the arbitration of those claims.'" *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)).

Written arbitration agreements are prima facie valid under the FAA and must be enforced unless the party opposed to arbitration "allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or 'such grounds as exist at law or in equity for the revocation of the contract.'" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 341 (5th Cir. 2004) (quoting *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.,* 817 F.2d 326, 332 (5th Cir. 1987)). Challenges to the validity of an arbitration agreement are segregated into two types: those that challenge the validity of the contract as a whole and those that challenge the validity of the arbitration agreement itself. *Brown v. Pacific Life Ins. Co*, 462 F.3d 384, 396–97 (5th Cir. 2006) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 564 U.S. 440, 444, 126 S. Ct. 1204 (2006)). Challenges to the validity

of the contract as a whole are to be decided by the arbitrator.  *Id.*  Challenges to the validity of the arbitration agreement itself, however, belong to the court.  *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S. Ct. 1801 (1967)).

In the present case, Ranzy signed both the Note and the Arbitration Agreement, each of which contain the arbitration provision.  Under the FAA, therefore, there is a prima facie valid agreement to arbitrate.  Ranzy, however, contends that the arbitration provision itself is invalid because (1) the arbitration provision was procured by fraud; and (2) performance is now impossible since the NAF no longer arbitrates consumer disputes.  Dkt. 17 at 4–5.  As Ranzy challenges the validity of the arbitration provision, and not the contract as a whole, the court must address each of her contentions.

*2.      Fraudulent Inducement*

Under Texas law, the elements of fraudulent inducement are that a speaker: (1) made a material misrepresentation; (2) that the speaker knew was false or made recklessly without any knowledge of truth and as a positive assertion; (3)  the speaker intended the other party to rely on the statement; (4) and the plaintiff detrimentally relied on the misrepresentation.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003) (citing *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

Ranzy avers that the defendants fraudulently induced her into signing the arbitration agreement by "representing to her that the [NAF] would be a fair, impartial, and unbiased arbitration forum and representing that it would pay all arbitration fees."  Dkt. 17 at 6.  Defendants, however, were allegedly colluding with the NAF to "have arbitration awards in its favor in exchange for inducing consumers into the arbitration agreements naming the [NAF] as the sole forum possible and agreeing to pay all fees."  *Id.*  As evidence to support this collusion, Ranzy points out that the NAF

5

agreed to stop conducting consumer arbitrations. *Id.* These accusations fall well short of demonstrating that Ranzy was fraudulently induced into entering the arbitration agreement. Ranzy offers no evidence that Extra Cash colluded with the NAF. Nor does Ranzy demonstrate how she relied upon this information in agreeing to the arbitration provision. Additionally, the plain language of both the Note and the Arbitration Agreement contradict any statements that might have been made to Ranzy to the effect that defendants would pay all arbitration fees. *See* Dkt. 15, Exs. 1, 2. For these reasons, Ranzy's challenge to the validity of the arbitration provision on the basis of fraudulent inducement must fail.

*3.     Impossibility*

Ranzy next contends that the arbitration provision is invalid because of impossibility of performance—because the arbitration provision specifically names the NAF as the sole arbitrator, and because the NAF no longer handles consumer arbitrations, the arbitration provision is impossible to perform. Dkt. 7 at 10. Defendants contend, however, that the fact the NAF is no longer an available forum in which to arbitrate Ranzy's claims does not make the arbitration agreement invalid. Instead, § 5 of the FAA provides a mechanism for the court to appoint an arbitrator in this situation. Dkt. 18 at 10.

Although the FAA was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," it "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248 (1989) (citations omitted). The FAA "simply requires courts to enforce private negotiated agreements to arbitrate, like other contracts, in accordance to their terms." *Id.* The FAA does, however, provide for the court to appoint an arbitrator under certain circumstances. Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, *or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator* or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C.A. § 5 (emphasis added). There are differing holdings as to whether § 5 allows for the appointment of an arbitrator when the arbitrator specifically named in the arbitration provision is no longer available. *See Grant v. Magnolia Manor-Greenwood, Inc.*, 678 S.E.2d 435, 438 (S.C. 2009) (recognizing the split amongst courts as to whether § 5 of the FAA applies when the parties have specified an exclusive arbitration forum, but that forum is no longer available).

For example, the Second Circuit has held that § 5 does not apply when the named arbitrator becomes unavailable. *See In re Salomon Inc. S'holders' Derivative Litig.*, 68 F.3d 554, 560 (2nd Cir. 1995). In *In re Salomon*, the parties agreed to arbitrate exclusively before the NYSE. *Id.* at 556. The NYSE, however, declined to arbitrate the dispute. *Id.* Defendants argued that § 5 of the FAA should apply and requested the court appoint on arbitrator in place of the NYSE. *Id.* The court, however, interpreted the word "lapse" in § 5 to mean "'a lapse in time in the naming of the' arbitrator or in the filling of a vacancy on a panel of arbitrators or some other mechanical breakdown in the arbitrator selection process." *Id.* at 560. Under this analysis, § 5 is inapplicable when the specifically named arbitrator becomes unavailable. *See also Dover Ltd. v. A.B. Watley, Inc.*, No. 04-7366, 2006 WL 2987054, *6 (S.D.N.Y. Oct. 18, 2006) ("Section 5 . . . is inapplicable when the parties have specified an exclusive arbitral forum, but that forum is no longer available.").

Other courts, however, have interpreted § 5 to apply in situations where the named arbitrator becomes unavailable. The Eleventh Circuit, in *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217

(11th Cir. 2000), held that when the chosen arbitration forum is unavailable, "§ 5 applies and a substitute arbitrator may be named." *Id.* at 1222; *see also Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006); *Ex parte Warren*, 718 So. 2d 45, 48 (Ala. 1998); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill. 1990). These cases, however, do recognize an exception when the "choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern.'" *Brown*, 211 F.3d at 1222 (citing *Zechman*, 742 F. Supp. at 1364, which in turn cites *Nat'l Iranian Oil,* 817 F.2d at 326). Under this exception, the failure of the chosen forum precludes arbitration.

In the present case, the court need not determine whether § 5 is applicable when a chosen arbitrator becomes unavailable because the NAF was clearly an integral part of the arbitration provision. "Arbitration agreements are subject to the same rules of construction used to interpret contracts." *Harvey v. Joyce*, 199 F.3d 790, 794 (5th Cir. 2000). However, any ambiguities must be resolved in favor of arbitration. *Id.* To determine whether a named arbitrator is an integral part of the arbitration agreement, the court must look to the "essence" of the arbitration agreement. *Grant*, 678 S.E.2d at 439 (citations omitted). In this case, the plain language of the arbitration provision in both the Note and the Arbitration Agreement explicitly states that all disputes *"shall be resolved . . . by and under* the Code of Procedure of the [NAF]." Dkt. 15, Exs. 1, 2. Additionally, "all claims *shall be filed* at any NAF office," or on the NAF web site. *Id.* This is mandatory, not permissive language and evinces a specific intent of the parties to arbitrate before the NAF. *See Reddam*, 457 F.3d at 1059–61 (outlining criteria for courts to use in determining whether the selection of a specific arbitrator is integral to the arbitration clause and noting, that at a minimum, the arbitrator must be expressly named); *Carideo v. Dell*, No. C06-1772JLR, 2009 WL 3485933, *4 (W.D. Wash. Oct. 26, 2009) (arbitration provision that provided that disputes "shall be resolved

exclusively and finally by binding arbitration *administered* by the NAF" was sufficient to find the NAF as integral to the arbitration clause) (emphasis added); *but see Adler v. Dell*, No. 08-cv-13170, 2009 WL 4580739, *4 (E.D. Mich. Dec 3., 2009) (same language as *Carideo* insufficient to show NAF integral to the arbitration clause). In light of the plain meaning of the arbitration provision, the court cannot appoint another arbitrator even though the NAF is an unavailable forum—the parties "cannot be compelled to arbitrate a dispute if [they have] not agreed to do so." *Nat'l Iranian Oil*, 817 F.2d at 335 (citations omitted). The motion to compel arbitration is, therefore, denied.

**B.     Motion to Dismiss**

Defendants also ask the court to dismiss Ranzy's claims under Rule 12(b)(6) for failure to state a claim, or in the alternative, motion for more definite statement. Dkt. 16. In response, Ranzy asks the court to allow her to amend her complaint to cure any possible deficiencies and to add additional parties and claims. Dkt. 20. Since there is no Rule 16 scheduling order in place in this case and in light of Rule 15's exhortation to "freely give leave" for amendments, the plaintiff's motion to amend is granted and the defendants' motion to dismiss is denied as moot. *See* FED. R. CIV. P. 15 & 16.

## Conclusion

For the reasons stated above, defendants' motion to compel arbitration (Dkt. 15) is DENIED. Additionally, plaintiff's motion to amend her complaint (Dkt. 20) is GRANTED and defendants' motion to dismiss (Dkt. 16) is DENIED AS MOOT.

Signed at Houston, Texas on March 11, 2010.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY