UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHERYL RANZY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-09-3334 |
| § | |
| SINGLE N CORPORATION, *et al.*, § | |
| § | |
| *Defendants*. § | |

**ORDER**

Pending before the court is defendants Extra Cash of Texas, Inc., Edmundo Tijerina, and Cynthia Salinas's (collectively, "Extra Cash Defendants") and defendants Amigo Capital LLC, Amigo Financial Services LP, St. Croix Financial Group, Inc., Z Cash of Texas, Inc., and Z Holdings, Inc.'s (collectively, "Z Cash Defendants") application for a preliminary injunction under Federal Rule of Civil Procedure 65. Dkt. 67. Having considered the application, response, reply, and applicable law, the court is of the opinion that the application should be DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Cheryl Ranzy obtained a payday loan from Extra Cash for $500.00 in September 2008. Dkt. 28. Ranzy alleges that defendant Extra Cash of Texas, Inc. ("Extra Cash") required her to leave a post-dated check for $625.00, which would run on her next payday. *Id.* Ranzy claims that she could not afford to pay the $625.00 on her next payday, so Extra Cash allowed her to renew the loan by making an interest payment of $125.00 per month. *Id.* According to Ranzy, she made the $125.00 payments from September 2008 through February or March of 2009. *Id.* Then, in the spring of 2009, Ranzy claims that she was unable to work and therefore could not make any payments to Extra Cash. *Id.* Defendant Extra Cash attempted to contact Ranzy by telephone to

collect the debt. Dkt. 33. Ranzy also allegedly received a letter demanding payment "and threatening to send the [original post-dated] check to the 'investigations office' to have the check 'filed on.'" Dkt. 28. Ranzy claims that she told Extra Cash that she was out of work and could not pay. *Id.*

In the summer of 2009, Ranzy's husband, her mother, her supervisor at her job, and a student assistant at her job allegedly advised her that "someone representing himself as an agent in the 'check fraud investigations' department was calling for [Ranzy] . . . and that they were going to 'press charges' if [Ranzy] did not pay the debt." *Id.* Ranzy claims that she contacted the person at the "check fraud department" who had been leaving messages with her family and at her workplace and that she recognized the person's voice as being the voice of "Eddy," the loan representative at Extra Cash that she had dealt with in the past. *Id.* Eddy allegedly advised Ranzy that she owed $125.00 on the debt and that if she did not pay she would be prosecuted for check fraud. *Id.* Ranzy obtained a cashier's check for $125.00 and went to Extra Cash to pay off the debt. *Id.* When she arrived, she saw that her file was open on Eddy's desk, and deduced that Eddy must have been making the calls to her mother, husband, and supervisor. *Id.* When she made the payment, Eddy allegedly gave Ranzy a receipt that reflected that the principal on her loan was still $500.00. *Id.* Extra Cash contends, however, that Ranzy owes $375.00 plus accrued interest, as well as attorneys' fees incurred due to Ranzy's default. Dkt. 33.

Ranzy filed her original complaint on October 15, 2009 (Dkt. 1), and she filed an amended complaint on December 15, 2009 (Dkt. 9). The Extra Cash Defendants then filed a motion to dismiss Ranzy's first amended complaint, or, alternatively, for a more definite statement, and a motion to compel arbitration. Dkts. 15, 16. Ranzy objected to arbitration, claiming, among other arguments, that (1) the arbitration provision was fraudulently induced, and (2) it was impossible to

arbitration with the National Arbitration Foundation, as required by the provision, because that organization no longer arbitrated consumer disputes. Dkt. 17. Ranzy also requested permission to amend her complaint in lieu of dismissal. Dkt. 20. The court denied the motion to compel arbitration, finding that the specified forum was no longer available. Dkt. 24. The court also denied the motion to dismiss and granted the motion to amend the complaint. *Id.* On April 9, 2010, the Extra Cash Defendants filed a notice of appeal regarding the order denying the motion to compel, and on April 19, 2010, the court stayed the case pending the outcome of the interlocutory appeal. Dkts. 35, 36, 37, 38, 40. On September 23, 2010, the Fifth Circuit affirmed the judgment. Dkt. 45.

On March 22, 2010, Ranzy filed her second amended complaint. Dkt. 28. Ranzy's second amended complaint, unlike her original and first amended complaints, makes claims on behalf of herself and those similarly situated, pursuant to Federal Rule of Civil Procedure 23. *Id.* On October 7, 2010, Ranzy filed a motion to certify a class action pursuant to Rule 23.[1] Dkt. 48. On December 2, 2010, the Extra Cash defendants and the Z Cash Defendants filed a motion for injunctive relief, claiming that Ranzy's loan applications contain a class action waiver and agreement to the entry of injunctive relief should she attempt to participate in a class action, and requesting that the court issue a preliminary injunction prohibiting her "from filing, seeking, pursuing, or conducting discovery in furtherance of filing, seeking, or pursuing a class certification in this case." Dkt. 67, attach. 3 (proposed order).

## II. LEGAL STANDARD

"To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable

---

[1] Ranzy has subsequently amended her motion to certify, and the response is not due until March 18, 2011. *See* Dkt. 88.

injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009). A preliminary injunction is "an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Id.* (citation omitted).

### III. ANALYSIS

The Extra Cash and Z Cash Defendants request that the court issue a preliminary injunction, because the loan application and the note that Ranzy signed contain provisions prohibiting class action litigation. Dkt. 67. Specifically, the applications contain the following clause:

> AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS ACTION: To the extent permitted by law, you agree that you will not bring, join or participate in any class action as to any claim, dispute or controversy you may have against us, our employees, officers, directors, services and assigns. You agree to the entry of injunctive relief to stop such a lawsuit or to remove you as a participant in the suit. You agree to pay the attorneys' fees and court costs we incur in seeking such relief. This agreement does not contribute [sic.] a waiver of any of your rights and remedies to pursue a claim individually and not as a class action in binding arbitration as provided above.

Dkt. 67, Exhs. A, B. Ranzy claims that the defendants have not shown a substantial likelihood that they will prevail on the merits, that there is no substantial threat of an irreparable injury, and that the defendants have waived their right to injunctive relief either by waiting too long to file the motion or by participating in class discovery. In passing, Ranzy mentions that "an injunction would disserve the public interest" because the "class action vehicle is favored by the public interest of allowing numerous claims be pursued by representative(s) to further judicial economy." *Id.* at 4.

**A. Substantial Likelihood of Success**

Since the Extra Cash and Z Cash Defendants seek an injunction prohibiting Ranzy from "filing, seeking, pursuing, or conducting discovery in furtherance of filing, seeking, or pursuing a class certification in this case," the necessary question under the first prong of the preliminary injunction test is whether the defendants have a substantial likelihood of success as to their claim that this lawsuit should not proceed as a class action. Ranzy claims that the defendants have not shown a substantial likelihood that they will prevail on the merits because the applications upon which defendants relied in their application for injunctive relief are not the controlling documents. Dkt. 68. Ranzy claims that the Loan Note and the TILA Disclosure ("Note") govern this case, and that this document contains a merger clause. *See id.* The Extra Cash Defendants argue that (1) one of the applications attached to their motion is dated *after* the Note, so the merger clause in the Note cannot apply; (2) Ranzy herself has stated that her claims arise out of the Note *and* the CSO Agreement between her and Extra Cash; (3) the CSO Agreement and CSO Disclosure Statement demonstrate that the Note is not the sole basis on suit, and they are not merged into the Note; (4) the applications authorize the lender to verify credit and employment history, so they "are necessarily ongoing and survivable, and do not merge into the Note"; (5) the Note acknowledges that there is a separate CSO contract, which it incorporates by reference; and (6) the Note itself contains a class action waiver clause. Dkt. 76.

The Extra Cash Defendants are correct in their claim that the Note is not the only controlling document in this case. The Note and the CSO Agreement are both relevant because they represent agreements between Ranzy and different parties—the Note is between Ranzy and Amigo Financial Services, LP, and the CSO Agreement is between Ranzy and Extra Cash. Dkt. 68, Exh. A; Dkt. 76, Exh. A. Both of these documents will therefore need to be consulted because Ranzy has sued both

5

Amigo Financial Services and Extra Cash. The relevance of the applications is, however, questionable. The Extra Cash Defendants have not presented any evidence showing that the applications are valid and enforceable agreements. They appear to be mere applications for credit—they do not contain any promises to extend credit or pay, and, while they are signed by Ranzy, neither the lender nor the CSO signed them.[2] Dkt. 67, Exhs. A, B; *see also AKIB Const., Inc. v. Neff Rental, Inc.*, No. 14-07-00063-CV, 2008 WL 878935, at *4 (Tex. App.–Houston [14th Dist.] Apr. 3, 2008, no pet.) (noting that the credit application at issue in that case merely sought an extension of credit and did not contain a promise to pay by the plaintiff or any promises whatsoever by the defendant). It is the applicant's burden to show a reasonable likelihood of success. The Z Cash and Extra Cash Defendants have not shown a reasonable likelihood of success with respect to their claim that the class action waiver contained within the applications will preclude Ranzy from bringing or participating in a class action.

However, defendants do not depend only on the applications. Th Extra Cash Defendants point out that the Note also contains a class action waiver. The waiver states:

> **INTENTION NOT TO BRING OR PARTICIPATE IN CLASS OR CONSOLIDATED ACT IONS OR ARBITRATION**: It is your and our intention in connection with this loan and related transactions not to bring or participate in any class or consolidated action or arbitration as to any claim, dispute or controversy either of us may have against the other (or the employees, officers, directors or assigns of the other) or that you may have against the CSO (or its employees, officers, directors or assigns).

---

[2] The court notes that the Note and CSO Agreements are not signed by the defendants, either. However, Ranzy does not contest the validity of these agreements.

6

Dkt. 68, Exh. 1 at 3.  The CSO Agreement contains a similar provision:

> INTENTION NOT [TO] BRING OR PARTICIPATE IN CLASS OR CONSOLIDATED ACTIONS OR ARBITRATIONS:  It is your and our intention in connection with this CSO Agreement and the Loan not to bring or participate in any class or consolidated action or arbitration as to any claim, dispute or controversy either of us may have against the other (or the employees, officers, or assigns of the other) or that you may have against the CSO (or its employees, officers, directors or assigns).

Dkt. 76, Exh. 1.  Thus, the Note, which is the document that Ranzy claims is the controlling agreement, as well as the CSO Agreement, which pertains to Extra Cash as opposed to Amigo Financial, specifically waive the right to bring or participate in class action litigation against the lender and the CSO.  It therefore appears that, if a waiver of one's right to participate in class-action litigation in these circumstances is enforceable, defendants have a substantial likelihood of success that this case will not proceed as a class action.

**B.** **Substantial Threat of Irreparable Injury**

Ranzy also argues that there is no substantial threat of an irreparable injury if the court denies the application for a preliminary injunction because the waivers in the applications upon which the Extra Cash and Z Cash Defendants rely allow for the recovery of attorneys' fees.  Dkt. 68 at 4.  Thus, according to Ranzy, the defendants have a legal redress for fees and expenses encountered if she continues to pursue class certification.  The Extra Cash Defendants appear to argue that their irreparable injury is not only the legal expenses and fees, but also monetary damages that may be incurred should Ranzy and the potential class members prevail on their claims.  *See* Dkt. 76 at 7.  Then, while conceding that "injunctive relief generally is not appropriate to secure post-judgment legal relief in the form of money damages," the defendants argue that injunctive relief is proper if the remedy at law would require multiple suits in order to gain the relief that the injunction would

7

provide. *Id.* The defendants cite *Federal Savings & Loan Insurance Corp. v. Dixon* in support of this concept. 835 F.2d 554 (5th Cir. 1987).

In *Dixon*, the Fifth Circuit specifically stated that its holding was confined to the facts of that case. *Id.* at 566. The *Dixon* plaintiff sought to freeze the assets of the defendants who allegedly engaged in illegal lending practices, self-dealing, and improper financial accounting, so that the defendants would not dissipate the assets before judgment. *Id.* at 556. The *Dixon* Court cited *Lynch Corp. v. Omaha National Bank*, 666 F.2d 1208 (8th Cir. 1981), in support of its holding. In *Lynch Corp.*, the Eighth Circuit held that a district court did not abuse its discretion when it issued a preliminary injunction that barred the defendant from distributing money to a corporation's shareholders from an escrow fund. The fund had been established in connection with the plaintiff's agreement to purchase the corporation, and the district court barred distribution of the fund until after the final determination as to the plaintiff's lawsuit requesting rescission of the purchase agreement (pending in another court). *See Lynch Corp.*, 666 F.2d at 1209-10. The court noted that if it did not issue the injunction and the plaintiff ultimately prevailed on its claims, it would "be forced to pursue numerous transferees who received escrow money from [the defendant]." *Id.* at 1212. The Eighth Circuit reasoned that there "was no adequate remedy at law because a multiplicity of suits would be required to gain relief." *Id.*

Here, the facts are easily distinguishable from both *Dixon* and *Lynch Corp.* Unlike the *Dixon* defendants, the Extra Cash and Z Cash Defendants are not attempting to keep the plaintiffs from dissipating funds that the defendants would receive should they prevail. And, unlike the *Lynch Corp.* defendants, the Extra Cash and Z Cash Defendants are not in danger of having to pursue multiple lawsuits to gain relief if the injunction is not granted. If the defendants prevail on their

argument relating to the enforceability of the contractual waivers, the class will never be certified. *See* Dkt. 67, Exhs. A, B. Thus, the potential injury is not irreparable.

**C.     Threatened Injury to Defendants Versus Harm to Potential Plaintiffs and Public Policy**

The court suspects that the threatened injury to defendants would not outweigh the harm to the potential plaintiffs. Under the facts of this case, a whole class of potential plaintiffs who have claims that are too small to justify the expense of litigation would be precluded from having their claims heard if defendants are successful in their attempt to contractually exclude their clients from participating in class action lawsuits. Ranzy only peripherally refers to this issue in her opposition to the preliminary injunction, and defendants did not brief the issue. Resolution of this issue is unnecessary at this point because defendants have not shown that the potential injury is irreparable. The court therefore declines to rule on this issue until it has been fully briefed—presumably at the class certification stage.[3]

### IV. CONCLUSION

Defendants have failed to meet their burden demonstrating that the extraordinary remedy of injunctive relief is necessary at this stage of the litigation. According, their application for a preliminary injunction (Dkt. 67) is **DENIED**.

Signed at Houston, Texas on March 10, 2011.

_____
Gray H. Miller
United States District Judge

---

[3] Ranzy also argues, without citing authority, that the defendants have waived their right to assert their arguments by waiting "until the 11th hour to raise this hair-brained argument," and that the defendants waived their right to request injunctive relief by participating in class discovery. Since the court is denying the application, the court need not address these arguments.