UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHERYL RANZY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-09-3334 |
| § | |
| EXTRA CASH OF TEXAS, INC., *et al.*, § | |
| § | |
| *Defendants*. § | |

**ORDER**

Pending before the court is plaintiff Cheryl Ranzy's amended motion for class certification (Dkt. 84). The court has reviewed the motion, response, reply, related documents, and applicable law, and is of the opinion that the motion for class certification should be DENIED.

**I. BACKGROUND**

The main issue presented in Ranzy's motion to certify a class is whether a class action waiver in documents that individuals obtaining loans from a payday loan company sign is valid and enforceable. Plaintiff Cheryl Ranzy obtained a payday loan from Extra Cash for $500.00 in September 2008.[1] Dkt. 28. She signed four forms in connection with obtaining the loan—two applications, a Loan Note and TILA Disclosure (the "Note), and a Credit Services Organization Agreement (the "CSO Agreement"). Dkt. 92, Exhs. 1-3. Each of these forms contains both an arbitration clause and a class action waiver. *Id.*

When the loan became due, Ranzy could not pay it and defendant Extra Cash of Texas, Inc. ("Extra Cash") allegedly allowed her to renew the loan by making an interest payment of $125.00

---

[1] The background and procedural history outlined here are abbreviated versions. Consult the court's previous orders for more information.

per month. *Id.* According to Ranzy, she made the $125.00 payments for several months but was unable to continue making the payments in spring of 2009. *Id.* When Extra Cash attempted to collect the debt, Ranzy claims that she told Extra Cash that she was out of work and could not pay. *Id.* Ranzy contends that in the summer of 2009 a person in Extra Cash's "check fraud department" advised her that she owed $125 on the debt, and she obtained a cashier's check for this amount. *Id.* However, when she went to pay off the loan, she was advised that her balance after making the payment was still $500. *Id.*

Ranzy filed her original complaint on October 15, 2009 (Dkt. 1) and an amended complaint on December 15, 2009 (Dkt. 9). Neither of these complaints asserted claims on behalf of a class. *See* Dkts. 1, 9. Defendants Extra Cash, Edmundo Tijerina, and Cynthia Salinas (collectively, "Extra Cash Defendants") filed a motion to compel arbitration. Dkts. 15, 16. Ranzy objected to arbitration, claiming, among other arguments, that it was impossible to arbitrate with the National Arbitration Foundation as required by the arbitration clauses in the loan documents because that organization no longer arbitrated consumer disputes. Dkt. 17. The court denied the motion to compel arbitration, finding that the specified forum, which was an integral part of the agreement to arbitrate, was no longer available. Dkt. 24. The Extra Cash Defendants appealed this order, and on April 19, 2010, the court stayed the case pending the outcome of the interlocutory appeal. Dkts. 35, 36, 37, 38, 40. On September 23, 2010, the Fifth Circuit affirmed the judgment. Dkt. 45.

On March 22, 2010, Ranzy filed her second amended complaint. Dkt. 28. Ranzy's second amended complaint makes claims on behalf of herself and those similarly situated, pursuant to Federal Rule of Civil Procedure 23. *Id.* On October 7, 2010, Ranzy filed her original motion to

2

certify a class action pursuant to Rule 23, and on February 15, 2011, she filed an amended motion to certify. Dkts. 48, 84.

In her amended motion to certify, Ranzy acknowledges that the court must determine, as a threshold matter, whether the class waivers contained in the loan documents are enforceable. She contends that they are not because (1) the waivers were "part and parcel" of the arbitration agreements and, since the arbitration agreement is not enforceable, neither are the waivers; and (2) the waivers are contracts of adhesion and unconscionable as against public policy in the State of Texas. Dkt. 84 at 7-8. Ranzy thus requests that the court hold that the waivers are unenforceable.

Ranzy moves for the court to, after deciding the threshold issue in her favor, certify the following class and subclasses under Federal Rule of Civil Procedure 23:

<u>The General Class</u>

All persons: (I) residing in the State of Texas (ii) for whom Extra Cash or Z Cash arranged a consumer loan in the principal amount of $100 or more (iii) from Amigo Financial or St. Croix (iv) during the time period beginning on October 15, 2007, and ending on the date of certification of the class, (v) who signed a Credit Services Organization Agreement and a Credit Services Organization Disclosure Statement with Extra Cash or Z Cash and (vi) who signed a Loan Note and TILA Disclosure payable to Amigo Financial or St. Croix,

-and-

<u>Subclass 1</u>

(vii) who were charged by Extra Cash or Z Cash under the Credit Services Organization Agreement a CSO fee of $25 per $100 of the amount financed to such person.

-and/or-

Subclass 2

(vii) who were charged by and paid to Extra Cash or Z Cash fees in the amount of $25 per $100 of the amount financed to such person (viii) subsequent to entering into the Credit Services Organization Agreement with Extra Cash or Z Cash (ix) for "renewal" of their Loan (x) without having signed a new written Credit Services Organization Agreement with Extra Cash or Z Cash and a new written Loan Note and TILA Disclosure with Amigo Financial or St. Croix.

Dkt. 84 at 6-7.

The Extra Cash Defendants point out that the Note and the CSO Agreement each have severance clauses, which state that if one provision of the Note or CSO Agreement is invalid or unenforceable, it does not affect the enforceability of the other provisions.[2]  Dkt. 92 at 5.  They argue, therefore, that the invalidity of the arbitration clauses in the various agreements does not impact the class action waiver clauses.  *Id.*  Moreover, they point out that the class action waiver clauses are completely separated from the arbitration clauses in the loan documents.  *Id.* at 11.  The Extra Cash Defendants also argue that Ranzy's claims under the Texas Finance Code and Credit Services Organization Act are not the subject of any specific provision permitting class actions and that class action litigation is a procedural device, not a right.  *Id.* at 10-13.  They assert that establishing unconscionability is extremely difficult in Texas and that it is generally only found if one party was incapable of understanding the agreement, which is not alleged here.  *Id.* at 15.  The Extra Cash Defendants argue that the public policy considerations actually favor enforcing the class action waiver here because if courts started finding so-called contracts of adhesion unenforceable, "much of commerce would screech to a halt."  *Id.* at 16.  Additionally, the Extra Cash Defendants contend that Ranzy cannot establish federal question jurisdiction over her class claims.  *Id.* at 17.

---

[2] The other defendants did not respond to Ranzy's amended motion to certify.

## II. ANALYSIS

**A.     May the Court Assert Federal Question Jurisdiction over Ranzy's Class Action Claims?**

Since the Extra Cash Defendants have questioned the court's jurisdiction, the court will address that argument first. The Extra Cash Defendants argue that Ranzy has not invoked the court's jurisdiction under the Class Action Fairness Act of 2005 and that her invocation of federal question jurisdiction does not provide a basis for the court to retain jurisdiction over Ranzy's class claims. Dkt. 192 at 17-18. The Extra Cash Defendants contend that Ranzy's class claims all involve alleged violations of state law and that none involves a substantial disputed question of federal law. *Id.* at 18. The Extra Cash Defendants assert that even Ranzy's allegations under the Fair Debt Collection Practices Act ("FDCPA") are in reality state claims because they rely fundamentally on the determination whether the defendants violated Texas lending and usury laws. *Id.* at 18-19.

Ranzy argues that courts have jurisdiction over *cases* not *claims* and that her claims under the FDCPA justify federal question jurisdiction. Dkt. 93 at 8. She asserts that the court has supplemental jurisdiction over all other claims. Additionally, she contends that her claim under the FDCPA is a federal claim, not a state claim.

Ranzy has clearly pled violations of the FDCPA on behalf of the class in her second amended complaint. Dkt. 28. The FDCPA is a federal statute (15 U.S.C. § 1692, *et seq.*), and the court has original jurisdiction over cases involving alleged violations of federal statutes. 28 U.S.C. § 1331; *see Prophet v. Myers*, 645 F. Supp. 2d 614, 620 (S.D. Tex. 2008) (Atlas, J.) (noting that the court has original jurisdiction over an FDCPA claim). If a federal court has original jurisdiction over one claim in a case, it may exercise supplemental—otherwise known as pendant or ancillary—"jurisdiction over all other claims that are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *Griffin v. Lee*, 621 F.3d 380, 384 (5th Cir. 2010). A "district court *may* decline to exercise supplemental jurisdiction over [such a] claim" in certain situations, such as if the claim raises a novel state law issue or the claim "substantially predominates" over the claim under which the court has original jurisdiction. 28 U.S.C. § 1367(c) (emphasis added). Here, the state claims are all part of the same case or controversy as the federal claim, and the court therefore elects to exercise supplemental jurisdiction over them. *See Prophet*, 645 F. Supp. 2d at 620 (electing to exercise supplemental jurisdiction over state claims that were derived "'from a common nucleus of operative fact'" as the FDCPA claim (quoting *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004)).

**B.     Are the Waiver Provisions "Part and Parcel" of the Arbitration Agreement?**

Ranzy argues that the class action waiver clauses are "part and parcel" of the arbitration clauses, which are invalid, and should likewise not be enforced. Extra Cash asserts that the class action arbitration waivers are completely separate from the arbitration clauses and that the intent of the parties not to participate in class actions is clearly reflected in the plain language of the contracts.

Under Texas law, the "primary purpose" of a court construing a written contract "is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts must "consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* "No single provision taken alone will be given controlling effect." *Id.* Instead, "all the provisions must be considered with reference to the whole instrument." *Id.* A "contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it

genuinely uncertain which one of two or more meanings is the proper meaning." *Univ. C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951). If the contract is unambiguous, the court must interpret it as a matter of law. *Coker*, 650 S.W.2d at 393.

The arbitration clause in the Note contains a subsection waiving the right to participate as a member of a class. Dkt. 84, Exh. C. It states: "YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE . . . AND/OR PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US . . . ." *Id.* After the arbitration clause and under a separate heading is a class action waiver:

> <u>INTENTION NOT TO BRING OR PARTICIPATE IN CLASS OR CONSOLIDATED ACTIONS OR ARBITRATION</u>: It is your and our intention in connection with this loan and related transactions not to bring or participate in any class or consolidated action or arbitration as to any claims, dispute or controversy either of us may have against the other (or the employees, officers, directors or assigns of the other) or that you may have against the CSO (or its employees, officers, directors or assigns).

*Id.* Right before the signature block the Note again mentions class actions:

> <u>BY SIGNING BELOW YOU AGREE TO ALL THE TERMS OF THIS NOTE, INCLUDING THE WAIVER OF JURY TRIAL AND ARBITRATION PROVISION, THE AGREEMENT TO ARBITRATE ALL DISPUTES AND THE AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS ACTIONS.</u>

*Id.*

The CSO similarly contains a waiver of the "RIGHT TO SERVE AS A REPRESENTATIVE . . . AND/OR PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS . . . " in its arbitration clause and a separate class action waiver:

> <u>INTENTION NOT [TO] BRING OR PARTICIPATE IN CLASS OR CONSOLIDATED ACTIONS OR ARBITRATIONS</u>: It is your and our intention in connection with this CSO Agreement and the Loan not to bring or participate in any class or consolidated action or arbitration as to any claim, dispute or controversy

> either of us may have against the other (or the employees, officers, directors, or assigns of the other) or that you may have against the CSO (or its employees, officers, directors or assigns).

*Id.*

The contracts also both contain clauses that specify what to do if any part of the contract is deemed invalid or unenforceable:

> **ENTIRE AGREEMENT:** This note is the entire agreement between you and us relating to the subject matter of this Note.. No modification of this Note shall be effective unless in writing and signed by you and us. If any provision of this Note is determined to be invalid or unenforceable, such provision shall be waived or modified, ir practicable, so as to achieve the intended purposes and shall not is, [sic] any way affect the enforceability provisions of this Note.

Dkt. 84, Exh. C.

> **Choice of Law:** Except to the extent that federal law applies, this CSO Agreement will he [sic] governed by the laws of the State of Texas[.] . . . If any provision of this CSO Agreement is invalid or unenforceable, then such offending provision, to the maximum extent permitted by law, shall be reformed so as to achieve its intended purpose and shall not affect the remaining provisions of this CSO Agreement.

Dkt. 84, Exh. B.

The court starts its analysis by considering the contracts as a whole and attempting to harmonize their provisions. Ranzy argues that the class action waiver clauses clearly only apply to class arbitration and, without an arbitration forum, the class action waiver provisions are no longer valid. Dkt. 84 at 13. This is a plausible argument if the waivers contained within the arbitration clauses were the *only* waivers in the agreements. But they are not. There are separate waivers with separate headings specifying that the parties agree not to bring or participate in class actions. There would be no need for the separate clauses if the arbitration clauses were valid since there are already waivers included in the arbitration clauses. But the agreements do have separate clauses, and the

logical reason for the inclusion of the separate clauses is found in the severance clauses, the clear purpose of which is to permit all other clauses to survive when one clause is found invalid. The drafters thereby ensured that the contracts would continue to contain class action waivers even if the arbitration clauses were found invalid. This interpretation of the intent of the contracting parties harmonizes all of the provisions.

The text of the class action waiver clauses provides additional support for the conclusion that the parties intended for the class action waiver clauses to apply outside of the context of arbitration. The clauses state that the parties intended not to participate in or bring "any class or consolidated action *or* arbitration as to any claim." The use of the disjunctive shows that the clause was not intended to apply only in the arbitration context.

The court therefore finds that the Note and CSO Agreement are not ambiguous. The contracts clearly evince an intention that the parties not participate in class action litigation.

**C.     Are the Waiver Provisions Void as Unconscionable Contracts of Adhesion?**

Ranzy argues, in the alternative, that the court should hold the provisions invalid because they are void as unconscionable contracts of adhesion. Dkt. 84 at 16. She asserts that maintenance of the class action mechanism is an important public policy in the State of Texas. *Id.* at 16-17. She additionally argues that even if the class waiver clauses are not unconscionable, they are not effective because Ranzy did not waive a known right, as the contract does not show a "manifest intention" on Ranzy's part to waive her right to participate in class remedies outside of the arbitration process. *Id.* at 18.

The Extra Cash Defendants argue that the ability to bring or participate in a class action is not a right, it is merely a procedural device, and the contracts evidence that the contracting parties

intended not to participate in class action proceedings. Dkt. 92 at 13. The Extra Cash Defendants assert that the class action waiver clauses are not unconscionable because there is no evidence that Ranzy was unaware of the waivers or incapable of understanding them. *Id.* at 16. And, the Extra Cash Defendants claim that the public policy considerations actually weigh in their favor because if consumer contracts of adhesion were deemed unconscionable, commerce would come to a halt. *Id.*

Under Texas law, unconscionable contracts are unenforceable. *In re Poly-America, L.P.*, 262 S.W.3d 337, 347 (Tex. 2008). "Whether a contract is contrary to public policy or unconscionable at the time it was formed is a question of law." *Id.* at 349 (citing *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006)). The party asserting that a contract is unconscionable bears the burden of proof. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 603 (Tex. App.—Texarkana 2008, no pet.). "[T]he term unconscionable has no precise legal definition" as it is "'not a *concept*, *but a determination* to be made in light of a variety of factors not unifiable into a formula.'" *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991) (Gonzalez, J., concurring) (quoting 1 J. White & R. Summers, Uniform Commercial Code § 4-3 at 203 (3d ed. 1988)).

> In determining whether a contract is unconscionable or not, the court must look to the entire atmosphere in which the agreement was made, the alternatives, if any, which were available to the parties at the time of the making of the contract; the non-bargaining ability of one party; whether the contract is illegal or against public policy, and whether the contract is oppressive or unreasonable.

*Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. 1975). Substantive unconscionability refers to the fairness of the contract itself, whereas procedural unconscionability refers to the circumstances surrounding

adoption of the contract. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (considering whether an arbitration clause was unconscionable).

### 1. Procedural Unconscionability

"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 858 (Tex. App.—Dallas 2010, no pet. h.). "The focus is on the facts surrounding the bargaining process." *In re Rangel*, 45 S.W.3d 783, 786 (Tex. App.—Waco 2001, orig. proceeding). A contract is not procedurally unconscionable simply because it is a contract of adhesion. *See In re Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007). "The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position." *Palm Harbor Homes*, 195 S.W.3d at 679. Rather, "[u]nconscionability principles are applied to prevent unfair surprise or oppression." *Id.* "Thus, a contract or contract term is not [procedurally] unconscionable merely because it is foolish for one party and very advantageous to the other, but only when the inequity is so extreme so as to shock the conscience." *Chubb Lloyds Ins. Co. of Tex. v. Andrew's Restoration, Inc.*, 323 S.W.3d 564, 578 (Tex. App.—Dallas 2010, pet. granted).

Here, Ranzy borrowed $500 from Extra Cash. There is no contention that Ranzy was unable to understand the class action waivers contained in the loan documents or that the waivers were somehow hidden. Ranzy's claims appear to hinge, instead, on the unequal bargaining positions of the parties. However, in Texas, a contract is not procedurally unconscionable simply because it results from a "take it or leave it" offer. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) (holding that a contract was not procedurally unconscionable simply because the

11

plaintiffs were "forced to accept it"); *In re Halliburton*, 80 S.W.3d 566, 572 (Tex. 2002) (holding that a take-it-or-leave-it offer by an employer to its at-will employees was not unconscionable). Ranzy has not provided the court with any details about the circumstances surrounding her acceptance of the agreements at issue, and while the court can infer that the bargaining positions of the parties were unequal given the "payday loan" context, there is no indication that the inequities were "so extreme so as to shock the conscience." Thus, Ranzy has not met her burden of showing that the class action waivers contained within the contracts were procedurally unconscionable.

### 2. Substantive Unconscionability

In determining if a clause is substantively unconscionable, Texas courts consider whether "'given the parties' general commercial background,'" the "'clause involved is so one-sided that it is unconscionable under the circumstances.'" *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010) (quoting *FirstMerit Bank*, 52 S.W.3d at 757 (citing Tex. Bus. & Com. Code § 2.302 cmt. 1)). "'The principal is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.'" *Id.* (quoting Tex. Bus. & Com. Code § 2.302 cmt. 1).

Ranzy's substantive unconscionability claims rest mainly on her assertion that Texas has an important public policy favoring class action litigation and that the waivers at issue here violate that policy and are thus unenforceable. While there are many cases that discuss whether an arbitration clause containing a class action waiver is enforceable, there are few cases that address whether a class action waiver outside of an arbitration clause is enforceable. The cases discussing whether an arbitration clause containing a class action waiver is enforceable, however, do not help unravel the issue presented here, as courts considering those cases must balance the national policy favoring arbitration with any potential inequities that may result from the enforcement of a class action

12

waiver. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1748-49 (2011) (noting that it is "beyond dispute that the [Federal Arbitration Act ("FAA")] was designed to promote arbitration" and determining that a California rule invalidating arbitration provisions that contain class-action waivers in most consumer contracts improperly "interferes with arbitration"); *Litman v. Cellco P'ship*, __ F.3d __, 2011 WL 3689015, at * 3-4 (3d Cir. Aug. 24, 2011) (attempting to "reconcile waivers of class arbitration with state court decisions reflecting public policies against such waivers" in light of *Concepcion* and noting that, under *Concepcion*, "a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA"); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212 (11th Cir. 2011) (stating that, "in light of *Concepcion*, state rules mandating the availability of class arbitration based on generalizable characteristics of consumer protection claims—including that the claims 'predictably involve small amounts of damages,' . . . that the company's deceptive practices may be replicated across 'large numbers of consumers,' . . . and that many potential claims may go unprosecuted unless they may be brought as a class, . . .—are preempted by the FAA, even if they may be 'desirable'" (citing *Concepcion*, 131 S. Ct. at 1746, 1753)); *Fensterstock v. Educ. Fin. Partners*, 611 F.3d 124 (2d Cir. 2010) (considering whether the FAA preempts California law prohibiting class action waivers), *vacated by Affiliated Computer Servs., Inc. v. Fensterstock*, 131 S. Ct. 2989 (2011) (mem.); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 (5th Cir. 2004) (noting that the court did not "discount" the plaintiff's argument that a "bar on collective proceedings has the effect of immunizing the defendants from low-value claims, no matter how meritorious those claims may be," but pointing out that the court's "calculus also must take into account that both federal and Louisiana policy favor arbitration as a method of dispute resolution"); *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110-12 (Cal. 2005) (same), *abrogated by*

13

*Concepcion*; *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (noting that the "primary purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate" and that procedural devices "such as Rule 42's provision for class action" may not "enlarge or diminish" the substantive rights and obligations relating to arbitration). Here, since the arbitration clause is invalid, there is no need to balance these competing interests.

Ranzy does not provide the court with any Texas cases that have found class action waivers unconscionable, and the court has found none. Instead, Ranzy claims that class action waivers that are not part of an arbitration clause are "completely one-sided in favor of the lender to the point of unconscionability" and that such a waiver seeks to "waive a right that the public policy of the State of Texas seeks to protect." Dkt. 84 at 17. Ranzy asserts that the following cases demonstrate that the class action mechanism is an important public policy in the State of Texas: *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000); *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 952-53 (Tex. 1996); *Monsanto v. Davis*, 25 S.W.3d 773, 787-88 (Tex. App.—Waco, pet. rev. dism'd w.o.j.)*;* and *Texas Mutual Insurance Co. v. Howell*, No. 13-05-026-CV, 2005 WL 2036215 (Tex. App.—Corpus Christi, Aug. 25, 2005, *pet. denied, order withdrawn, reh'g granted*).[3] The Texas Supreme Court cases at most stand for the proposition that class action litigation has an important role in appropriate cases; they do not support Ranzy's argument that the court should invalidate the class action waiver because it is contrary to Texas public policy. In *Sheldon*, the Texas Supreme

---

[3] As part of her policy argument, Ranzy asserts that section 349.403 of the Texas Finance Code "provides a statutory right to class action remedies in the context of a violation of the subtitle on consumer loans." Section 349.403(a) of the Texas Finance Code states: "In a class action that alleges one or more violations of this subtitle and *is determined by the court to be maintainable as a class action*, the class may recover the amount of actual damages proximately caused to the members of the class as a result of the violations." Tex. Fin. Code Ann. §349.403(a) (Vernon 2006) (emphasis added). The plain text of the statute demonstrates that the court must make the threshold determination whether a class action is maintainable before the remedies contemplated by the statute are triggered.

14

Court, in addressing whether a class should have been certified, outlined the history of the "class action device," pointing out its benefits. However, it noted that "[e]ven though it is an efficient device, there is no right to litigate a claim as a class action." *Sheldon*, 22 S.W.3d at 452-53. The Court ultimately found that the proposed class definition did not satisfy the "clearly-ascertainable requirement" and remanded the case back to the trial court to determine if the class should be redefined or decertified altogether. *Id.* at 455. In *Bloyed*, the Texas Supreme Court discussed the "class action's uneasy role in the adversary system." 916 S.W.2d at 952. The court pointed out the benefits of class litigation and noted that it did "not doubt the salutary nature of this procedural device under appropriate circumstances." *Id.* at 953. However, it also noted that "class actions are extraordinary proceedings with extraordinary potential for abuse." *Id.* The cases from Texas courts of appeal that Ranzy cites are more supportive of her position. In *Monsanto*, the Waco Court of Appeals noted that class "actions play an important role in our legal system," and found that preventing "the evasion of the important public policies furthered by the class action procedure" provided a "compelling circumstance justifying [the trial court's] issuance of [a] temporary injunction." 25 S.W.3d at 788. *Howell* does not contain extensive discussion of class action litigation, but the Corpus Christi Court of Appeals agreed with the trial court that "important public policies [are] furthered by the class action procedure." *Howell*, 2005 WL 2036215, at *10. While class action litigation received positive treatment in these two cases, they hardly represent a public policy interest that is so strong that parties may not contractually waive it.

Class actions do have many benefits that are important from a public policy perspective, but Ranzy's viewpoint that these public policy issues are important enough to make class action waivers in consumer contracts void is simply not supported by Texas law. Texas courts view the class action mechanism as a procedural device, not a right. Indeed, the Texas Supreme Court has specifically

15

noted that the "class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment." *Sw. Refining Co., Inc. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000). The class action furnishes "an efficient means for numerous claims with a common complaint to a remedy '[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages.'" *Bloyed*, 916 S.W.2d at 952 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S. Ct. 1166 (1980) (alteration in original)). However, under Texas law, the class action may not "'be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.'" *Bernal*, 22 S.W.3d at 437 (quoting Tex. R. Civ. P. 815). "[T]here is no entitlement to proceed as a class action." *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

Ranzy did not waive a "right" to bring or participate in a class action when she signed the loan agreements. Instead, she gave up the ability to use a procedural device that, if there are multiple claims, may have made this litigation more efficient and cost-effective. The waivers do not impact her right to assert an individual claim. Thus, the provisions are not so unfair as to shock the conscience.

In *AutoNation USA*, the Fourteenth Court of Appeals noted that "there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness" but that the plaintiff's "generalizations [did] not satisfy her burden to demonstrate" that an arbitration provision containing a class action waiver was invalid. *AutoNation USA*, 105 S.W.3d at 200. The same is true here. Ranzy's generalizations about violations of public policy and the general inferences that may be drawn about bargaining power in the payday-loan scenario are not enough

to demonstrate that the class action waivers were invalid. Accordingly, Ranzy has not shown that the class action waivers are substantively unconscionable.

**D.      Were the Waivers "Intentional Waivers"**

Ranzy claims that even if the waivers are not unconscionable, they are ineffective because they do not show a "manifest intention" on Ranzy's part to waive her "right" to participate in class-action litigation. Dkt. 84 at 18. "Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Dep't of Protective & Regulatory Servs. v. Schutz*, 101 S.W.3d 512, 516 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "In determining if a waiver has in fact occurred, the court must examine the acts, words, or conduct of the parties and it must be 'unequivocally manifested' that it is the intent of the party to no longer assert the right." *Id.* (citing *Robinson v. Robinson*, 961 S.W.2d 292, 299 (Tex. App.—Houston [1st Dist.] 1997, no writ), and *Enterprise-Laredo v. Hachar's*, 839 S.W.2d 822, 835-36 (Tex. App.—San Antonio 1992, no writ)). First, as noted above, in Texas the class action mechanism is a procedural device, not a right. Second, even if it were a right, an examination of the class action waivers in the agreements indicate that Ranzy "unequivocally manifested" her intent not to bring or participate in class action litigation when she signed the loan agreements. There is nothing ambiguous about the waivers. Under Texas law, a party who signs a contract is presumed to have read and understood its terms. *Am. Employers' Ins. Co. v. Aiken*, 942 S.W.2d 156, 159 (Tex. App.—Ft. Worth 1997, no writ); *D. Wilson Construction Co., Inc. v. McAllen Ind. School Dist.*, 848 S.W.2d 226, 230 (Tex. App.—Corpus Christi 1992, writ dismissed w.o.j.). Thus, Ranzy is presumed to have read and understood the waivers in the loan agreements, and she therefore intended to waive her ability to bring or participate in class action litigation against the defendants.

**E.       Does the Proposed Class Meet the Requirements of Rule 23?**

Because the loan agreements contain class action waivers and Ranzy has failed to show that these waivers are invalid, she may not assert claims on behalf of a class. There is no need therefore to reach the Rule 23 factors.

**IV. Conclusion**

Ranzy agreed not to bring, participate, or join in a class action when she signed the contracts associated with the $500 payday loan. These waivers were intentional waivers, they are independent of the arbitration waivers that have been ruled invalid, and they are not unconscionable under Texas law. Ranzy may not, therefore, bring the instant claims on behalf of a class. Accordingly, Ranzy's amended motion to certify the class is DENIED.

It is so ORDERED.

Signed at Houston, Texas on October 14, 2011.

_____
Gray H. Miller
United States District Judge