# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL RANZY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3334 |
| | § | |
| EXTRA CASH OF TEXAS, INC., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court are the (1) defendants Extra Cash of Texas, Inc. ("Extra Cash"), Edmundo Tijerina, Cynthia Salinas, Amigo Capital LLC, Amigo Financial Services LP ("Amigo Financial"), St. Croix Financial Group, Inc., Z Cash of Texas, Inc., and Z Holdings, Inc.'s (collectively "Defendants") motion for more definitive statement, motion to dismiss, or motion for partial summary judgment (Dkt. 104); and (2) plaintiff Cheryl Ranzy's motion for partial summary judgment (Dkt. 103). Having considered the motions, related documents, and applicable law, the court is of the opinion that Defendants' motion for more definitive statement, motion to dismiss, or motion for summary judgment should be DENIED, and Ranzy's motion for summary judgment should be GRANTED IN PART AND DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ranzy obtained a payday loan from Extra Cash for $500.00 in September of 2008. Dkt. 28. Ranzy alleges that Extra Cash required her to leave a post-dated check for $625.00, which would run on her next payday. *Id.* Ranzy claims that she could not afford to pay the $625.00 on her next payday, so Extra Cash allowed her to renew the loan by making a renewal payment of $125.00 per month. *Id.* According to Ranzy, she made the $125.00 payments from September 2008 through

February or March of 2009.  *Id.*  Then, in spring of 2009, Ranzy claims that she was unable to work and therefore could not make any payments to Extra Cash.  *Id.*  Extra Cash attempted to contact Ranzy by telephone to collect the debt.  Dkt. 33.  Ranzy also received a letter demanding payment "and threatening to send the [original post-dated] check to the 'investigations office' to have the check 'filed on.'"  Dkt. 103, Exh. LL.  Ranzy claims that she told Extra Cash that she was out of work and could not pay.  Dkt. 28.

In the summer of 2009, Ranzy's husband, her mother, her supervisor at her job, and a student assistant at her job allegedly advised her that "someone representing himself as an agent in the 'check fraud investigations' department was calling for [Ranzy]."  *Id.*  Ranzy claims that she contacted the person at the "check fraud department" who had been leaving messages with her family and at her workplace and that she recognized the person's voice as being the voice of "Eddy," the loan representative at Extra Cash that she had dealt with in the past.  *Id.*  Eddy allegedly advised Ranzy that she owed $125.00 on the debt.  *Id.*  Ranzy obtained a cashier's check for $125.00 and went to Extra Cash to pay off the debt.  *Id.*  When she made the payment, Eddy allegedly gave Ranzy a receipt that reflected that the principal on her loan was still $500.00.[1]  *Id.*

Ranzy filed her original complaint on October 15, 2009 (Dkt. 1), and she filed an amended complaint on December 15, 2009 (Dkt. 9).  Extra Cash, Salinas, and Tijerina then filed a motion to dismiss Ranzy's first amended complaint, or, alternatively, for a more definite statement, and a motion to compel arbitration.  Dkts. 15, 16.  Ranzy requested permission to amend her complaint in lieu of dismissal.  Dkt. 20.  The court denied the motion to dismiss and granted the motion to

---

[1]  Extra Cash contends that Ranzy owes $375.00 plus accrued interest, as well as attorneys' fees incurred due to Ranzy's default.  Dkt. 33.

amend the complaint.  Dkt. 24.  On March 22, 2010, Ranzy filed her second amended complaint.

Dkt. 28.  Ranzy's second amended complaint made claims on behalf of herself and those similarly

situated, pursuant to Federal Rule of Civil Procedure 23.  *Id.*  On April 16, 2010, defendants filed

a motion for more definitive statement.  Dkt. 39.  On February 15, 2011, Ranzy moved for leave to

file her third amended complaint.  Dkt. 85.  The court granted Ranzy's motion and denied

Defendants' motion for more definitive statement as moot.  Dkt. 88.  Ranzy also moved for class

certification.  Dkt. 84.  The court recently denied the motion for class certification.  Dkt. 116.

On April 29, 2011, Ranzy moved for summary judgment on her usury claims against Extra

Cash and Amigo Financial,[2] her breach of contract claims against Extra Cash, her claims under the

Texas Credit Service Organization Act ("CSOA") against Extra Cash, her claims under the Texas

Deceptive Trade Practices Act ("DTPA") against Extra Cash, and her claims under the Federal Fair

Debt Collections Practices Act ("FDCPA") against Extra Cash.  Dkt. 103.  Ranzy also requests the

court to rule that, because Edmundo Tijerina failed to pay Extra Cash's franchise tax at times

relevant to this action, he is personally liable for Ranzy's damages.  *Id.*  Finally, Ranzy moves for

an injunction barring Extra Cash's use of the CSO agreement form that it used with her because she

contends it violates the CSOA.

On May 2, 2011, Defendants moved for leave to file a motion for more definitive statement,

motion to dismiss, and motion for partial summary judgment.  Dkt. 104.  The court granted

Defendants' motion for leave to the extent that it requested leave to file a motion for more definite

---

[2] Ranzy also moved for partial summary judgment on usury claims against Z Cash of Texas
and St. Croix Financial Group, provided that this court granted her request for class certification.
Because the class was not certified, this order only addresses Ranzy's usury claims against Extra
Cash and Amigo Financial.

statement, and deemed the attached motion filed, but the court denied the motion to the extent it sought leave to file additional dispositive motions. Dkt. 114. While the motion requests a more definite statement, dismissal under Rule 9(b), 12(b)(6), or summary judgment under Rule 56, the motion's central contention is that even though Ranzy did not assert a claim for fraud, all of her claims sound in fraud and thus should be subject to the Rule 9(b) pleading standard. Dkt. 104-2.

The court will first discuss Defendants' motion for a more definite statement, dismissal, or summary judgment, and it will then address Ranzy's motion for partial summary judgment.

## II. ANALYSIS

### A. Defendants' Motion

Defendants assert that even though Ranzy did not file any claims specifically involving fraud or mistake, her usury and lending, CSOA, DTPA, and FDCPA claims must be pled with particularity because these claims "sound in fraud, or at the very least allege mistake." Dkt. 104-2. Additionally, even though Ranzy did not officially plead an alter ego theory, Defendants assert that her claim that "'Defendants used their enterprise to operate at the surface as if there were separate entities'" is "predicated on some type of alter ego theory," which Defendants state must be pled with particularity under Texas law. *Id*. (quoting Dkt. 28). Ranzy responds that she has not alleged fraud or mistake and that Defendants' motion must therefore be denied. Dkt. 115.

#### *1. Legal Standard*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). Under

Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal of a complaint if it believes that the plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Aschroft v. Iqbal,* 566 U.S. 662, 129 S. Ct. 1937 (2009); *Twombly*, 550 U.S. at 545.  The court accepts as true all facts alleged in a complaint, and views the facts in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  A plaintiff's complaint survives a Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 547.  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence.  *Id.*  This plausibility standard requires the plaintiff to plead facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Thus, the plaintiff must demonstrate "more than a sheer possibility that the defendant has acted unlawfully."  *Id.*  Furthermore, while the court must accept well-pleaded facts as true, it will not "strain to find inferences favorable to the plaintiff."  *Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir. 2004).

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565

F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)).  By its plain language, Rule 9(b) applies only to "averments of fraud or mistake," and not to claims where fraud is not an element and has not been averred.  *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, F.3d 363, 368–69 (5th Cir. 2001)**.**  Instead, claims not subject to Rule 9(b) are subject to the more lenient standard of Rule 8(a).  *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 677 (E.D. Tex. 2004)**.**

The Fifth Circuit interprets Federal Rule of Civil Procedure 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).  Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 185.  Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.*  However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).  Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

### 2. Usury

Defendants contend that Ranzy's usury claim "sounds in fraud" because it relies on her assertion that Defendants made a material false representation to Ranzy, knowing it was false. Dkt. 104-2.  However, Ranzy need not show that Defendants made a material false representation to prevail on her common-law usury claim, which has three elements—(1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower—none of which involves a material misrepresentation.[3]  *Lovick v. Ritemoney LTD*, 378 F.3d 433, 438 (5th Cir. 2004).  The heart of Ranzy's usury allegation is that Extra Cash, Amigo Financial, and St. Croix charged interest in excess of the maximum interest charge allowed.  Dkt. 85-1 at 20.  Ranzy need only prove that the Defendants loaned her money that she was obligated to repay and required interest in excess of that allowed by law.  Thus, Rule 9(b) particularity is not necessary.  *Cf. Lovick,* 378 F.3d  at 436-38 (considering a case under Texas law in which the plaintiff brought suit against an automobile title loan broker claiming the broker's fees were disguised interest which caused the loans to be usurious, and applying Rule 8(a), rather than Rule 9(b), to Lovick's usury claims).  Ranzy's usury claim meets the Rule 8(a) pleading standard.  Accordingly, Defendants' motion for a more particular statement of, dismissal of, or summary judgment on Ranzy's usury claim is DENIED.

---

[3]  Much of Texas' usury law, especially in the context of credit service organizations, has been superceded by the CSOA.  *Id.* at 442.  However, the "statutory action for usury did not repeal the common-law action." *Duggan v. Marshall*, 7 S.W.3d 888, 892 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

### 3. CSOA Violations

Defendants assert that Ranzy's CSOA claim likewise sounds in fraud yet is not pled with Rule 9(b) particularity.  Ranzy's CSOA claim is that Defendants violated section 393.201 of the Texas Finance Code, and that those violations have provided her a cause of action pursuant to sections 393.204, 393.502, and 393.503.  While there are other sections of the CSOA that sound in fraud and must be pled with particularlity, none of the sections of the CSOA listed in Ranzy's live complaint involves fraud.  *Compare* Tex. Fin. Code Ann. §§ 393.201, 204, 502, 503 (sections in Ranzy's complaint), *with* Tex. Fin. Code Ann. § 393.304 (prohibiting CSOs from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization"), *and* § 393.305 (prohibiting CSOs from "directly or indirectly engag[ing] in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization").  Section 393.201(a) states "[e]ach contract for the purchase of the services of a credit services organization by a consumer must be in writing, dated, and signed by the consumer." Tex. Fin. Code Ann. § 393.201(a).  Section 393.201(b) sets forth various requirements for the content of CSO agreements, including requiring each CSO agreement to "contain the name and address of the organization's agent in this state authorized to receive service of process." § 393.201(b).  Section 393.204 makes a breach of a CSO agreement by a CSO a violation of the CSOA.  § 393.204.  Section 393.502 allows courts to enjoin further violations of the CSOA.  § 393.502.  Finally, section 393.503 states: "A consumer injured by a violation of this chapter is entitled to recover: (1) actual damages in an amount not less than the amount the consumer paid the credit services organization; (2) reasonable attorney's fees; and (3) court costs." § 393.503.  Because these sections of the Finance Code simply refer to contractual deficiencies, rather than fraud, Ranzy's claims under the CSOA are not subject to the heightened

specificity requirements of Rule 9(b).  She has plausibly asserted her CSOA claim; therefore, Defendants' motion for a more definite statement of, dismissal of, or summary judgment on Ranzy's CSOA claim is DENIED.

### 4. DTPA Violations

Defendants also assert that Ranzy's DTPA claims, which are linked to her CSOA claims, should be pled with particularity.  However, Ranzy's claims under the DTPA are not subject to Rule 9(b) because they are based on her claims under the CSOA, which are themselves not subject to Rule 9(b).  Section 393.504 of the Texas Finance Code states "[a] violation of [the CSOA] is a deceptive trade practice actionable under Subchapter E, Chapter 17, Business & Commerce Code."  Tex. Fin. Code Ann. § 393.504.  Subchapter E of Chapter 17 is the codification of the DTPA.  A consumer may bring a claim under the DTPA if she is granted that right by another law, such section 393.504 of the Finance Code.  Tex. Bus. & Com. Code Ann. § 17.50(h).

There are cases that have applied Rule 9(b)'s heightened specificity requirements to claims under the DTPA, but in those cases the underlying claims involved fraud.  *See, e.g., Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (finding that the plaintiffs' DTPA claims were based on the same facts as their underlying fraud claims); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) (finding the plaintiffs' DTPA claims were based on fraudulent and negligent misrepresentations); *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 741–42 (S.D. Tex. 1998) (finding the plaintiffs' DTPA claims were based on common-law fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation).  More applicable to the instant case is *Prophet v. Myers*, 645 F. Supp. 2d 614 (S.D. Tex. 2008).  In *Prophet*, the court noted that the plaintiff's DTPA claims were based on violations of the FDCPA,

9

which are not subject to Rule 9(b), and determined that the plaintiff's DTPA claims should therefore not be subject to Rule 9(b). *Id*. at 617–18. Like the claims in *Prophet*, Ranzy's claims under the DTPA are based on her claims under the portions of a statute not subject to Rule 9(b) specificity. Because Ranzy's CSOA claims are not subject to Rule 9(b), neither are her DTPA claims. Defendants' motion for a more definite statement of, dismissal of, or summary judgment on Ranzy's DTPA claim is DENIED.

### 5. FDCPA Violations

Defendants similarly claim that Ranzy's FDCPA claims should be pled with particularlity. However, as noted in *Prophet*, claims under the FDCPA are not subject to the heightened specificity requirements of Rule 9(b). *Prophet*, 645 F. Supp. 2d at 617. The plaintiff's claims in *Prophet* were based on section 1692e of the FDCPA, which prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (2006). The *Prophet* court determined that, even though section 1692e involved allegations of false representations, Rule 9(b) still did not apply because establishing a violation section 1692e was substantially different than establishing common law fraud. *Prophet*, 645 F. Supp. 2d at 617. Here, Ranzy's claims under the FDCPA are based on section 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1). Establishing a violation of this section, like section 1692e, would be substantially different than establishing common law fraud. For this reason, Ranzy's claims under the FDCPA are not subject to the requirements of Rule 9(b), and Defendants' motion for a more

particular statement of, dismissal of, or summary judgment on these claims because they are not pled with particularity is DENIED.

### 6. Conspiracy

Defendants also request a more particular statement of, dismissal of, or summary judgment on Ranzy's conspiracy claim. However, Ranzy alleges that Defendants conspired to charge unlawful interest, finance charges, and fees in violation of the CSOA, and the portion of the CSOA Defendants allegedly conspired to violate does not involve fraud. The facts alleged supporting the conspiracy claim state a plausible claim for relief, and it does not need to be pled with particularity. Accordingly, Defendants' motion as it relates to Ranzy's conspiracy claim is DENIED.

In sum, none of Ranzy's claims is subject to Rule 9(b) particularity, so Defendants' motion for a more particular statement or to dismiss for lack of Rule 9(b) specificity is DENIED. Additionally, while Defendants move for dismissal pursuant to Rule 12(b)(6) and Rule 56, all of their arguments hinge on their theory that Ranzy's claims sound in fraud and should be pled with particularity. The motion to dismiss or for summary judgment is DENIED.

## B. Plaintiff's Motion

Also pending before the court is Ranzy's Motion for Partial Summary Judgment. Dkt. 103. Ranzy moves for summary judgment on her usury claims against Extra Cash and Amigo Financial, and her breach of contract claims, CSOA claims, DTPA claims, and FDCPA claims against Extra Cash. *Id.* She also asserts that, because he failed to pay Extra Cash's franchise tax, Tijerina is individually liable for Ranzy's damages. *Id.* She requests an award of monetary damages as well as an injunction. *Id.* Defendants have not responded to Ranzy's motion.

Under the local rules of the Southern District of Texas, failure to respond to a motion for summary judgment will be taken as a representation of no opposition. S.D. of Tex. R. 7.4. Although the motion is unopposed, Ranzy must show "that there is no genuine dispute as to any material fact and the [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Ranzy has failed to meet this burden for her usury claim, her breach of contract claim, and her FDCPA claim. Ranzy has, however, shown she is entitled to judgment as a matter of law with regard to portions of her CSOA claim and DTPA claim against Extra Cash.

### 1. Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir.2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir.2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir.2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden

shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.* "For any matter on which the non-movant would bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

### 2. Usury

In Texas, the elements of usury are: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Lovick*, 378 F.3d at 438. Ranzy's usury claims turn on whether Extra Cash and Amigo Financial were separate entities, the implication being that the shared benefit from the fees makes the fees interest. *See* Dkt. 103. Ranzy alleges that the two companies were separate only on paper, and that the use of the CSO model was merely a sham to avoid Texas usury laws. *Id.* To support her assertion, Ranzy cites to evidence that Edmundo Tijerina is the CEO of both Extra Cash and Z Cash, which are both CSOs. *Id.* & Exhs. B-1, G-I, K-M. She cites to evidence that Edmundo Tijerina was also in charge of both lending institutions involved—Amigo Financial or St. Croix—at the same time that he was CEO of the CSOs. Dkt. 103 & Exhs. G-I, K-M. Ranzy also cites to the deposition of Eduardo Tijerina, Edmundo Tijerina's brother, in support of the assertion that the CSOs

13

and lenders in question were not distinct entities.  Dkt. 103, Exh. B.  Eduardo Tijerina's deposition, however, does not support Ranzy's allegations, and instead supports the inference that Edmundo left Extra Cash in order to maintain the distinction between lenders and CSOs.  *Id*.  Ranzy cites to no evidence to support the assertion that, beyond Edmundo Tijerina's involvement, the CSOs were indistinct from the lenders.  Even if she had succeeded in demonstrating that Edmundo Tijerina was involved in both the CSOs and lending institutions, this evidence would still not carry Ranzy's summary judgment burden because she has not shown that the CSO fees were shared between the entities.  Ranzy has presented no evidence that Amigo Financial received more than incidental benefits from Extra Cash's fees, and in turn fails to show that such fees were in fact interest.  She thus fails to meet her burden under Rule 56 for her usury claim, and her motion for summary judgment on this claim is DENIED.

### 3. Breach of Contract

The elements for a breach of contract claim in Texas are (1) the existence of a valid contract; (2) performance or tendered performance by plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).  Ranzy bases her breach of contract claim on the assertion that each CSO "renewal fee" was a breach of contract, because her original agreement only authorized an initial, one-time CSO fee of $125.  This assertion is contradicted, however, by the relevant documents.  Both the CSO Agreement and the CSO Disclosure Statement read in their relevant parts, underlined and in capital letters, "YOU WILL BE CHARGED ADDITIONAL FEES IF YOU <u>OBTAIN NEW CREDIT SERVICES AND A NEW THIRD-PARTY LOAN TO PAY OFF</u>

14

AN EXISTING LOAN." Dkt. 103, Exhs. GG, HH. Both documents also provide a method for calculating these additional fees. *Id.* The initial agreement thus allowed Extra Cash to charge renewal fees, and the renewal fees were thus not breaches of the contract. Ranzy's motion for summary judgment on her breach of contract claim is DENIED.

### 4. CSOA Violations

Ranzy asserts that Extra Cash violated the CSOA by breaching the original CSO agreement, not providing the name of its agent for service of process in the CSO agreement, not properly setting forth the amount due for renewed CSO agreements, and not having new written agreements each time it charged her a $125 renewal fee. Dkt. 103. As a preliminary matter, the court finds the agreement between Amigo Financial and Ranzy was a loan under the Texas Finance Code. Tex. Fin. Code Ann. § 341.001(9). The court finds that Ranzy is a consumer, and Extra Cash is a Credit Service Organization under the Texas Finance Code. § 393.001(1), 393.001(3). Finally, the court finds Ranzy is a consumer, and Extra Cash a debt collector, under the FDCPA. 15 U.S.C. § 1692a(3); § 1692a(6) (2006).

The CSOA, as codified in the Texas Finance Code, has several requirements for CSO agreements, including that CSO agreements be in writing and contain certain information about the total payment and payment terms as well as set forth the name and address of the organization's agent for service of process and the address of the organization's principal place of business. *See* Tex. Fin. Code Ann. § 393.201. Ranzy moves for summary judgment on her claims that the CSO agreement or agreements between her and Extra Cash violated sections 393.201(a), (b)(1), (b)(4) and 204, and she seeks an injunction pursuant to section 393.502 and monetary damages pursuant to section 393.503.

Under section 393.201(a), CSO agreements must be in writing.  Tex. Fin. Code Ann. § 393.201(a).  According to the terms of the initial CSO agreement, a service fee could only be charged if Ranzy used Extra Cash's credit services—"new credit services"—to obtain a new third-party loan from Amigo Financial.  Dkt. 103, Exh. GG.  Here, Ranzy presents evidence that extra fees were charged to her account and that there were no new written agreements relating to the new fees.  Dkt. 103, Exh. BB (Ranzy's customer history report, which includes all payments made);  Dkt. 103, Exh B (citing Eduardo Tijerina's testimony that Ranzy's account renewals were done over the phone).  Under the CSOA, each time Ranzy obtained new credit services, the agreements for these services were required to be in writing.  Tex. Fin. Code Ann. § 393.201(a).  Since Ranzy has shown there were additional agreements that were not in writing, she has shown that Extra Cash violated section 393.201(a) of the CSOA.

Section 393.201(b)(1) requires CSO agreements to contain payment terms, including total payments.  Tex. Fin. Code Ann. § 393.201(b)(1).  Since the renewed agreements are not written, they obviously do not set forth payment terms.  Ranzy would have had to consult the original CSO agreement for payment terms.  While the original agreement and disclosure statement do state that Ranzy would be charged additional fees if she obtained new credit services to pay off her loan, they do not provide any information about these additional fees.  *See* Dkt. 103, Exhs. GG, HH.  Instead, they provide a hypothetical example about additional finance charges.  *See* Dkt. 103, Exhs. GG, HH.  Thus, the original agreement and subsequent unwritten agreements (or renewals) violate section 393.201(b)(1).[4]

_____

[4]  Although the original agreement covers both the original fee and renewals because it specifically refers to being charged additional fees if new CSO services are needed, the original agreement does not sufficiently set forth the payment terms of renewals.  It does not state how much

Under section 393.201(b)(4), a CSO agreement must "contain the name and address of the organization's agent in this state authorized to receive service of process."  Tex. Fin. Code Ann. § 393.201(b)(4).  Here, neither the CSO agreement nor the CSO disclosure statement contains the name or address of Extra Cash's agent authorized to receive service of process.  Dkt. 103, Exhs. GG-HH.  This omission violates section 393.201(b)(4) of the Texas Finance Code.

Finally, under section 393.204, a breach by the CSO of a CSO agreement is a violation of the CSOA.  Tex. Fin. Code Ann. § 393.204.  Ranzy argues that Extra Cash failed and refused to perform its obligations under the CSO agreement by charging and collecting additional fees beyond the initial CSO fee.  Dkt. 103.  However, as noted above, even though the original CSO agreement did not provide sufficient details about obtaining new credit services if Ranzy failed to pay the initial loan on time, the CSO agreement *did* indicate that additional fees would be charged if new credit services and a new third-party loan was needed.  Ranzy has not shown that Extra Cash violated the original CSO agreement in this respect as a matter of law, and is thus not entitled to judgment on her claim of a violation of section 393.204 as a matter of law.

In sum, Ranzy is not entitled to summary judgment on her claim of a violation of section 393.204 of the CSOA, but she has shown that Extra Cash violated section 393.201 of the CSOA by not setting forth the renewal agreements in writing, not setting forth the total amount due under these agreements, and failing to provide the appropriate information about its agent for service of process within the agreement or agreements.  She is thus entitled to summary judgment for her claims against Extra Cash under section 393.201 the CSOA.  Her motion for summary judgement as it relates to

---

these additional fees will be or how often they will be assessed.  *See* Dkt. 103, Exh. GG.  Extra Cash violated section 201 by continuing to charge Ranzy $125 CSO fees without properly informing her in advance, in writing, as required by the CSOA.

claims under section 393.201 of the CSOA is GRANTED, and her motion for summary judgment as it relates to claims under section 303.204 of the CSOA is DENIED.

### 5. DTPA Violations

The Texas Deceptive Trade Practices Act ("DTPA") "grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see* Tex. Bus. & Com Code Ann. § 17.50(a)(1) (West 2006). The elements of a DTPA cause of action are: (1) the plaintiff is a consumer; (2) the defendant committed acts "in connection with the purchase or lease of any goods or services"; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of plaintiffs injuries. *Amstadt*, 919 S.W.2d at 649; *Washington v. U.S. HUD*, 953 F. Supp. 762, 777 (N.D. Tex. 1996). The DTPA also acknowledges that other acts may provide a basis for action under the DTPA. Tex. Bus. & Com. Code Ann. §§ 17.43, 17.50(h).

"A violation of [the CSOA] is a deceptive trade practice actionable under Subchapter E, Chapter 17, Business & Commerce Code." Tex. Fin. Code Ann. § 393.504. A consumer may bring a claim under the DTPA, as codified in the Texas Business and Commerce Code, if she is granted that right by another law, such as section 393.504 of the Finance Code. Tex. Bus. & Com. Code Ann. § 17.50(h); *see, e.g., Watson v. Citimortgage, Inc.*, — F. Supp. 2d —, 2011 WL 4526980, *6 (E.D. Tex. 2011) (finding that violations of the Texas DTPA are deceptive trade practices that "tie into" the DTPA).

Because Ranzy has shown that her agreement with Extra Cash violates the CSOA, and because the CSOA provides consumers with a cause of action under the DTPA, she has shown that

she is entitled to summary judgment for her claims against Extra Cash under the DTPA.  Thus, her

motion for summary judgment on her DTPA claim is GRANTED.

### 6. FDCPA Violations

Ranzy claims that Extra Cash attempted to collect charges not authorized by the CSO

agreement or permitted by law and that she is therefore entitled to judgement as a matter of law under

the section 1692f(1) of the FDCPA.  Dkt. 103.  "The FDCPA was enacted in part 'to eliminate

abusive debt collection practices by collectors.'" *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d

385, 388 (5th Cir. 2002) (quoting 15 U.S.C. § 1692(e) (1997)).  "The FDCPA prohibits debt

collectors from, *inter alia*, using any false, deceptive, or misleading representation or means in

connections with the collection of a debt." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d

1232, 1234 (5th Cir. 1997).  Section 1692f(1) prohibits debt collectors from collecting "any amount

(including any interest, fee, charge, or expense incidental to the principal obligation) unless such

amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

The term "debt collector" means "any person who uses any instrumentality of interstate commerce

or the mails in any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due

another."  15 U.S.C. § 1692a(6).  "The term does not ordinarily include creditors who, directly or

indirectly, try to collect debts owed them." *Taylor*, 103 F.3d at 1234.  However, the term "does

include any creditor who, in the process of collecting his own debts, uses any name other than his own

which would indicate that a third person is collecting or attempting to collect such debts." *Id.* (citing

15 U.S.C. § 1692a(6)).

Ranzy has failed to show that there is no issue of material fact with regard to Extra Cash's status as a "debt collector."  She argues that Extra Cash was either attempting to collect Amigo Financial's debt or, if it was merely collecting its CSO fee and not the loan amount, it was using a name other than its own—"Check Fraud Investigations."  Dkt. 103.  However, she presents no evidence that the fees Extra Cash attempted to collect were not merely the CSO fees due to Extra Cash, and she presents no evidence that Extra Cash was using another name to collect the debt other than a conclusory statement in her complaint and motion that Extra Cash used the name "Check Fraud Investigations" when attempting to collect the debt.[5]  Summary judgement is thus not appropriate on this record.  Ranzy's motion for partial summary judgment on her FDCPA claims is therefore DENIED.

### 7. Tijerina's Individual Liability

Ranzy argues that Tijerina is liable individually for unauthorized renewal fees charged between May 30, 2008, and December 2, 2009, a timeframe during which Extra Cash's corporate charter/certificate of registration was forfeited because Tijerina failed to pay its franchise tax.  Dkt. 103 & Exh. CC (forfeiture notice dated May 30, 2008), Exh. DD (application for reinstatement received by the Secretary of State on December 2, 2009).  The Texas Tax Code states "[i]f the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived . . . ." Tex. Tax Code Ann. § 171.255(a).  Officers are only liable for debts

---

[5]  The summary judgment evidence does not include an affidavit attesting to Extra Cash's alleged use of the name "Check Fraud Investigations," and the debt collection letter submitted by Ranzy is from "Extra Cash."  *See* Dkt. 103, Exh. LL.

incurred while the corporation's privileges have been forfeited for failure to pay the franchise tax. *Williams v. Adams*, 74 S.W.3d 437, 441 (Tex. App.—Corpus Christi 2002, pet. denied).  The Texas Supreme Court has noted that the purpose of section 171.255 is "to prevent wrongful acts of culpable officers of a corporation," and that the statute is meant to protect the "public and particularly those dealing with the corporation."  *Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79, 81-82 (1946).

Tijerina can only be held individually liable to Ranzy for unauthorized renewal fees if the liability for these fees is a "debt" that was "created or incurred" during the time Extra Cash's corporate charter was forfeited.  In *Schwab v. Schlumberger Well Surveying Corp.*, the Texas Supreme Court considered whether it was appropriate to impose liability on the officers and directors of a corporation for funds payable by the company from a promissory note dated January 1, 1941, that was evidenced by a note that originated in 1938 as an open account and then consisted of six renewal notes, only one of which was sued upon.  198 S.W.2d at 79-80.  The corporation's right to do business in Texas was forfeited in 1940 because it did not pay its franchise tax.  *Id.* at 79.  The trial court and initial appellate court held that the directors and officers were personally liable under a predecessor statute to section 171.255.  *Id.* at 80.  The court noted that the

> words 'created' and 'incurred,' as used in the statute, have a clear and well defined meaning.  The word 'create' means 'To bring into existence something which did not exist.'  10 Words and Phrases, Perm. Ed., p. 331, *Roth v. State*, 158 Ind. 242, 63 N.E. 460, 469.  The word 'incur' is defined in *Ashe v. Youngst*, 68 Tex. 123, 125, 3 S.W.454, 455, as 'Brought on,' 'occasioned,' or 'caused.'

*Id.*  The court determined that no debt had been created or incurred by the renewal of the note because the obligation existed before the renewals.  *Id.*  The obligation, in fact, existed before the forfeiture of the right to do business.  *Id.*

21

Here, the contract and renewal fees occurred while Extra Cash's right to do business was forfeited, but Extra Cash's right to do business has now been restored.  Under the statute, Tijerina may be held liable for "debts" "created or incurred" between May 30, 2008, and December 2, 2009. The original CSO agreement is dated December 10, 2008.  Dkt. 103, Exh. GG.  Extra Cash charged Ranzy additional fees several times in 2008 and 2009.  If these additional fees are "debts" and they were "incurred or created" by Extra Cash at the time they were charged to Ranzy, then Tijerina may be held individually liable.

Under the normal understanding of the term "debts," it would appear that the fees only become Extra Cash's debts through a judgment from this court finding that Extra Cash must return the fees because they were unlawful.  Since Extra Cash is now up-to-date on its taxes, as far as the court has been informed, this judgment would be incurred or created at a time when Tijerina would be protected from individual liability by the corporate form.  However, some Texas courts hold that debts that are "brought into existence, caused by, resulted from, or arose out of the performance or implementation" of a contract "relate back to and are authorized at the time of execution of the contract." *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109, 112 (Tex. App.—Dallas 1984, no writ) (holding that debts relating to the breach of a car lease agreement related back to the time of the promise to pay made in the rental contract for purposes of liability under section 171.255); *see also Jonnet v. State*, 877 S.W.2d 520, 523-24 (Tex. App.—Austin 1994, writ denied) (collecting cases in which the courts held that damages from breach related back to the date of the contract but holding that claims relating to a failure to follow a Texas administrative rule did not relate back to the date of said failure).  Other Texas courts hold that the term "debt" should be strictly construed, and a corporate officer should be held individually liable under section 171.255 only if the debts were

liquidated at the time of forfeiture. *See Cain v. State*, 882 S.W.2d 515, 517, 519 (Tex. App.—Austin 1994, no writ) (noting that "it is difficult to see how such a meaning," i.e. "unliquidated debt", "could be assigned to the word if it is required to be construed strictly, that is to say, narrowly, literally, and technically").

In *Jonnet v. State*, the Austin Court of Appeals indicated that the relate-back doctrine may be appropriate in some cases, but held that penalties imposed for a company's failure to plug abandoned oil wells in violation of Texas Statewide Rule 14 did not relate back to the time when the company failed to plug the wells for purposes of assessing liability under the Texas Tax Code. The court reasoned that the debt was not incurred or created before the penalty was assessed, even though there was an obligation to plug the wells before this date, because the statute authorizing the assessment of damages for the failure to plug the wells indicated that the Railroad Commission of Texas "*may or may not* assess penalties for violations of its rules." *Jonnet*, 877 S.W.2d 520, 523 (Tex. App.—Austin 1994, ) (discussing Tex. Natural Resources Code Ann. § 81.0531). The court thus held that the debt was not created or incurred until the Commission actually made the decision to assess penalties. *Id.* at 523-24; *see also Wilburn v. State*, 877 S.W.2d 755 (Tex. App.—Austin 1992, no writ).

At this point, the only claims that are resolved are the DTPA claims and the claim under section 393.201 of the CSOA. These claims are technical statutory violations relating to the form of the contract or contracts. Unlike in *Jonnet*, where the Railroad Commission may have decided not to impose liability even though the administrative rule was not followed, here Ranzy is entitled, under the CSOA, "to recover: (1) actual damages in an amount not less than the amount the consumer paid the credit services organization; (2) reasonable attorney's fees; and (3) court costs." Tex. Fin. Code

Ann. § 393.503.  This entitlement arose as soon as the violations occurred.  Entitlement to damages under the DTPA likewise arose as soon as the violations occurred.  *See* Tex. Bus. & Com. Code Ann. § 17.50.  The debts from violations of these statutes were thus "created" at the time the corporate privileges were forfeited, even though the judgment occurs after the privileges have been regained.  Moreover, the debt resulting from judgment relates back to the time at which the violation occurred.  This conclusion fulfills the statutory purpose of preventing wrongful acts of culpable officers of a corporation and protecting members of the public who deal with the corporation, as it would hardly be fair to allow directors and officers of corporations who fail to pay their taxes to escape the consequences of their actions during that time period simply by paying their taxes before judgment is entered.  *See Schwab.*, 198 S.W.2d at 81-82 (discussing the statutory purpose).

The court notes, however, that its conclusion that the debts relating to Extra Cash's violations of the CSOA and the DTPA were created at the time the violations occurred or relate back to that time does not necessarily apply to Ranzy's other causes of action.  Given the disparate rulings of the Texas appellate courts with regard to the relate-back doctrine, the court finds that the most prudent course is to determine whether Tijerina can be held individually liable for Ranzy's other claims only after (and if) Extra Cash's liability has been established.

In sum, the court finds that the debts associated with the violations of the CSOA and DTPA were created or relate back to the time of contract, during which Extra Cash's corporate privileges were forfeited.  Thus, under section 171.255(a) of the Texas Tax Code, Tijerina may be held individually liable for these debts.  The court, however, defers ruling on Tijerina's potential individual liability for Ranzy's other causes of action until liability is established for those claims, if indeed Ranzy is able to establish liability.

## C.  Damages

In her Motion for Summary Judgment, Ranzy makes several assertions regarding the amount of damages she is owed by Extra Cash, Amigo Financial, and Tijerina.  The court declines to rule on damages at this time.

## D.  Injunction

Ranzy also requests an injunction against Extra Cash under section 393.502 of the Texas Finance Code, barring the use of the CSO Agreement.  Dkt. 103.  Section 393.502 states, "A district court on the application of the attorney general or a consumer may enjoin a violation of this chapter." Tex. Fin. Code Ann. § 393.502.  Here, the CSO agreement Extra Cash used for Ranzy does not contain the information required by the CSOA.  The court finds, therefore, that an injunction against the further use of this form is appropriate.  Extra Cash is hereby ENJOINED from using the form CSO agreement that it used with Ranzy.  Any form agreements Extra Cash uses in the future must contain the information required by the CSOA.

### III. Conclusion

Defendants' motion for a more definite statement, dismissal, or partial summary judgment is DENIED.  Ranzy's motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART.  Her motion for summary judgment for violations of the FDCPA and section 393.204 of the CSOA and on her common law usury and breach of contract claims is DENIED.  Her motion for summary judgment on her claim that Extra Cash violated section 393.201 of the CSOA and the related DTPA violation is GRANTED.  Additionally, the court finds that Tijerina may be held individually liable for the CSOA and DTPA violations.  The court defers ruling on Tijerina's individual liability on Ranzy's other claims until (and if) liability is established.  Additionally, the court defers ruling on damages until after a trial is held on the merits of the remaining claims.

It is so ORDERED.

Signed at Houston, Texas on December 21, 2011.

_____
Gray H. Miller
United States District Judge