UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL RANZY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3334 |
| | § | |
| EXTRA CASH OF TEXAS, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

Pending before the court are Defendants Extra Cash of Texas, Inc., Z Cash of Texas, Inc., Z Holdings, Inc., Amigo Financial Services, LP, Amigo Capital, LLC, St. Croix Financial Services, LP, St. Croix Capital, LLC, Edmundo Tijerina, and Cynthia Salinas's (collectively, "Defendants") motion for reconsideration of the court's order granting, in part, plaintiff Cheryl Ranzy's motion for summary judgement (Dkt. 119) and Defendants' motion for leave to file a motion for summary judgment (Dkt. 120). Having considered the motions, related documents in the record, and applicable law, the court is of the opinion that the motion to reconsider (Dkt. 119) should be GRANTED IN PART AND DENIED IN PART, and the motion to file a motion for summary judgment (Dkt. 120) should be DENIED.

**I. BACKGROUND**

This case involves a payday loan for $500.00. Dkt. 85-1. Ranzy obtained the loan by completing documents at the Wilcrest Drive location of Extra Cash of Texas, Inc. ("Extra Cash") on December 10, 2008. *Id.* Defendant Amigo Financial Services LP ("Amigo") was the lender, and Extra Cash was the Credit Services Organization, which arranged for the loan from Amigo. *Id.* The loan plus $125.00 was due on December 31, 2008, but Ranzy could not afford to repay the loan at that time. *Id.* Instead, she made payments of $125.00 every two weeks through March of 2009,

which the Extra Cash representative allegedly told her were loan renewal payments. *Id.* Ranzy discontinued making the payments after she became ill and was unable to work. *Id.* In April 2009, Extra Cash allegedly started making collection calls and writing letters demanding payment, and otherwise engaging in allegedly unsavory collection practices. *Id.*

On October 15, 2009, Ranzy filed a complaint against Extra Cash and others asserting various claims under the Texas Finance Code, the federal FDCPA, and RICO. Dkt. 1. Ranzy filed her first amended complaint on December 15, 2009. Dkt. 9. On January 27, 2010, defendants filed a motion to stay and compel arbitration. Dkt. 15. The court denied that motion on March 11, 2010. Dkt. 24. On March 22, 2010, Ranzy amended her complaint to add claims on behalf of those similarly situated as well as claims under chapter 393 of the Texas Finance Code and the Texas Deceptive Trade Practices Act. Dkt. 28. On April 9, 2010, Defendants appealed the order denying the motion to compel arbitration. Dkt. 35. The court stayed the case pending appeal. Dkt. 40. On August 25, 2010, the Fifth Circuit affirmed this court's order denying the motion to compel arbitration. Dkt. 45. On October 7, 2010, the court entered a new agreed scheduling order, which set the substantive discovery deadline on April 1, 2011 and the dispositive motion deadline on May 2, 2011. Dkt. 47. Ranzy filed her motion for class certification on February 15, 2011. Dkt. 84. On March 31, 2011, Ranzy moved for the court to extend the substantive discovery deadline from April 1, 2011 until October 1, 2011. Dkt. 94. Defendants filed a response in opposition to the extension of substantive discovery. Dkt. 95. Defendants noted that Ranzy's "decision to wait to begin substantive discovery . . . is within her sole discretion and evidences a strategy known only to her. It is not, however, good cause and may not be used as a legitimate basis for extension fo the discovery deadline." Dkt. 95. The court entered an order extending the discovery deadline from April 1, 2011 to May 27, 2011. Dkt. 102. At this point, neither Ranzy nor Defendants had moved

to change the other deadlines, and the court did not modify any other deadlines. Thus, the deadlines set forth in the October 7, 2010 scheduling order still applied.

On April 29, 2011, Ranzy filed a motion for partial summary judgment. Dkt. 103. On May 2, 2011, which was the deadline for dispositive motions, defendants filed an opposed motion for extension of time and modification of the scheduling order, in which they requested an extension of the dispositive motion deadline. Dkt. 105. On the same day, they filed an opposed motion for leave to file a motion for more definite statement. Dkt. 104. They attached a motion for more definite statement, motion to dismiss, and motion for partial summary judgment to the motion for leave. *Id.* In the motion for leave, they asserted that they could not adequately prepare a motion for summary judgment until the court addressed their assertion, contained within the attached motion for a more definite statement, that Ranzy's claims sounded in fraud. *Id.* On May 16, 2011, defendants filed a motion reurging their motion for an extension of time. Dkt. 108. The court issued an order addressing Defendants' motion for leave to file a motion for a more definite statements (Dkt. 104), Defendants' motion for a modification of the scheduling order (Dkt. 105), and motion reurging the motion for a modification of the scheduling order (Dkt. 108) on September 22, 2011. Dkt. 114. The court granted in part and denied in part the motion for leave to file a motion for a more definite statement. *Id.* It deemed the motion for a more definite statement, which was attached to the motion for leave, filed, and required that the plaintiff respond to the motion within twenty days. *Id.* The court denied the motion to the extent it sought leave to file a motion to dismiss or motion for summary judgment after the deadline. *Id.* It also denied Defendants' motion for modification of the scheduling order. *Id.* On December 21, 2011, the court entered an order denying the motion for a more definitive statement (Dkt. 104-1) and partially granting Ranzy's motion for partial summary judgment (Dkt. 103). Dkt. 118. The court considered the motion for partial summary judgment

unopposed, as the defendants did not file a response and did not file a motion for an extension of time to respond. *Id.* However, Ranzy did not meet her burden of proof with regard to all issues, so the motion was denied in part. *Id.*

Defendants filed a motion for reconsideration of the order granting Ranzy's motion for partial summary judgment on January 6, 2012. Dkt. 119. Three days later, on January 9, 2012, Defendants filed a motion for leave to file a motion for summary judgment. Dkt. 120. This order addresses these two motions. Defendants correctly note in their motion for reconsideration that the deadline for their response to Ranzy's motion for summary judgment passed on May 20, 2011, but they argue that they could not respond to the motion for partial summary judgment because the court had not ruled on the motion for a more definitive statement. Dkt. 119. They also acknowledge that the deadline for dispositive motions has passed, but they argue that they were unable to move for summary judgment within the dispositive motion deadline because discovery was still ongoing. *Id.* Though the discovery deadline was on May 27, 2011, defendants and Ranzy had a discovery dispute regarding discovery propounded on December 23, 2010, and they sought court intervention on May 10, 2011. This dispute was resolved after a hearing before Judge Johnson on June 17, 2011. Defendants claim that Ranzy executed releases for her bank and medical records and documents relating to other loans she had taken out after this discovery hearing. *Id.* Defendants claim that after they received the releases, it took six month to obtain the relevant pay-day loan, bank and medical records, and that it was a "arduous, expensive and time-consuming process."[1] *Id.* & Exh. 5.

Defendants also assert that they were unable to respond to Ranzy's motion for summary judgment because, though the court granted their request to file the motion for leave for a more

---

[1] A review of Defendants' counsel's billing records indicates that some of the subpoenas were not drafted until August 2011 even though Ranzy signed releases in June 2011. Dkt. 119, Exh. 5. This delay in seeking records no doubt delayed the receipt.

definite statement and ordered Ranzy to respond to the motion for a more definitive statement within twenty days, it "did not provide Defendants with any additional time or the opportunity to file a response following Plaintiff's response." Dkt. 119. Defendants argue that they needed to file an additional response so that they could "fairly respond to Plaintiff's motion for summary judgment." *Id.* Defendants, however, did not attempt to file a reply or seek leave to file a reply.

## II. LEGAL STANDARD

### A.   Motion to Reconsider

A party may file a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(e). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment. *Id.* A motion to reconsider pursuant to Federal Rule of Civil Procedure 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) allows parties "to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. An "unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Id.* (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).

### B.   Filing of Motion for Summary Judgment After Dispositive Motion Deadline

A "district court has broad discretion in controlling its own docket, . . . [which] includes the ambit of scheduling orders and the like." *Edwards v. Cass Cnty., Tex.*, 919 F.2d 273, 275 (5th Cir. 1990). A scheduling order may be modified only for good cause and with the judge's consent." Fed.

R. Civ. P. 16(b)(4). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d Ed. 1990)). A "court's refusal to allow the filing of a substantive motion on the eve of trial three months after the expiration of a deadline . . . should normally be deemed well within the court's discretion." *Edwards*, 919 F.2d at 275.

### III. ANALYSIS

Defendants argue that they did not did not meet their deadlines for filing a motion for summary judgment and a response to Ranzy's motion for summary judgment because they needed Ranzy to amend her complaint to meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b) before they could adequately address her claims. They state that they timely advised the court of the necessity for a continuance within the 21-day timeframe for a response to Ranzy's motion for summary judgment by filing a motion for modification of the scheduling order on May 2, 2011, requesting resolution of the discovery dispute on May 10, 2011, and re-urging the motion for a modification of the scheduling order on May 16, 2011. Additionally, they assert that they could not file a motion for summary judgment or adequately respond to Ranzy's motion for summary judgment because Ranzy had not produced documents in response to their December 23, 2010 discovery requests, and the court did not require her to do so until after the dispositive motion deadline. They complain that the court extended the discovery deadline without extending the dispositive motion deadline or their deadline on their response to Ranzy's motion for summary judgment or their own motion for summary judgment. The Defendants also note that the court terminated all pretrial deadlines on August 8, 2011 and cancelled docket call and that they have been operating without a scheduling order ever since. They claim that this cancellation of deadlines

caused "confusion over deadlines related to the Defendants' Response to the Summary Judgment" and that this has "predjudice [sic.] Defendants unfairly and provided the Plaintiff with a windfall ruling that negates the large quantity of evidence which was finally obtained and which clearly illustrates justiciable issues of material fact in every cause alleged by Plaintiff." Dkt. 119.

### A.     Motion for Leave to File Motion for a More Definite Statement

Defendants filed their motion for leave to file a motion for a more definite statement on May 2, 2011. Dkt. 104. In that motion, they argued that the claims in Ranzy's third amended complaint sounded in fraud and that the court should require her to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.* They noted that "these issues with regards to fraud must be addressed and Defendants should have proper notice of same" before they could adequately prepare a motion for summary judgment. *Id.* The court granted the motion for leave, in part, on September 22, 2011, deemed the attached motion for a more definite statement filed, and gave Ranzy twenty days from the date of the order to respond. Dkt. 114. Ranzy timely responded. Dkt. 115. Defendants did not file a reply. On December 21, 2011, the court denied the motion to file a more definite statement in the same order in which it granted in part and denied in part Ranzy's motion for partial summary judgment. Dkt. 118. Defendants now claim that the court's failure to rule on their motion to file a motion for a more definite statement until September 22, 2011, precluded them from responding to Ranzy's April 29, 2011 motion for partial summary judgment. Dkt. 119.

As the court understands this argument, the court's failure to address Defendants' motion for a more definite statement until it entered the order partially granting Ranzy's motion for partial summary judgment precluded Defendants from responding to *any* of the arguments asserted in Ranzy's motion for partial summary judgment. The court ultimately denied the motion for a more definite statement, so even if it had ruled on the motion to file the motion for a more definite

7

statement and ruled on the motion for a more definite statement sooner, it would not have provided defendants with any new arguments for their response to Ranzy's motion for summary judgment.

Moreover, if Defendants needed an extension of time to respond to Ranzy's motion for partial summary judgment, they needed to ask for one. Under Federal Rule of Civil Procedure 56(d), a court may defer considering a motion for summary judgment or allow the nonmovant additional time to obtain affidavits or take discovery if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). While the motion for leave to file a motion for a more definite statement advised that Defendants believed they needed amended pleadings in order to file their own motion for summary judgment, the motion did not advise that Defendants were unable to respond to Ranzy's motion for partial summary judgment. *See* Dkt. 104. Furthermore, even if the motion did advise the court that Defendants did not believe they could respond to the motion for partial summary judgment until the court ruled on the motion for a more definite statement, the proper procedural mechanism for requesting an extension of one's response time is to file a motion under Rule 56(d), not to bury such a statement in a motion addressing a completely different matter.

Finally, even if the court had found merit in Defendants' motion for a more definite statement and required Ranzy to plead with more particularlity, this would not have helped defendants defend against the claims on which the court granted summary judgement. The court granted Ranzy's motion for partial summary judgment on her claims against Extra Cash under section 393.201 of the Credit Services Organization Act ("CSOA") based entirely on the substance of the actual agreements produced in this case—which were produced and provided to the court well before the dispositive motion deadline. Dkt. 118. The court also granted Ranzy's motion with regard to her Texas Deceptive Trade Practices Act ("DTPA"), to the extent this claim was based on the violations of the CSOA. *Id.* The only other claim for which the court found Ranzy met her summary judgment

8

burden was Ranzy's claim that Edmundo Tijerina could be held individually liable for the debts associated with the violations of the CSOA and DTPA. *Id.* A more detailed complaint would not have helped Defendants defend against this claim.

With regard to Defendants' argument that they could not file a motion for summary judgment until the court addressed their argument that Ranzy needed to state her claims with more particularity, the court finds that this excuse is not "good cause" for modifying the scheduling order to allow Defendants to file a motion for summary judgment at this late date. Obviously Defendants were able to articulate a motion for summary judgment even though the court did not require Ranzy to plead with more particularity, as they have attached a proposed 37-page motion to the motion to file a motion for summary judgment. Dkts. 120, 120-2.

**B.     Need for Discovery**

Defendants next claim that they could not respond to Ranzy's motion for partial summary judgment and file their own motion for summary judgment because discovery was ongoing and they were unable to secure necessary discovery and documents from Ranzy prior to the deadlines. Dkt. 119. Defendants were opposed to an extension of the discovery deadline as of April 11, 2011, when they filed a supplemental response to Ranzy's motion for an extension of the substantive discovery deadline. Dkt. 98. Then, in their May 2, 2011, motion for an extension of time, Defendants stated that they served additional discovery on Ranzy on April 27, 2011, and argued that the court should extend the dispositive motion deadline so that their experts have time to review the new discovery. *Id.* The court denied this motion. Dkt. 114.

Defendants have not demonstrated good cause for extending the dispositive motion deadline to allow their very late motion for summary judgment, and they have not provided a believable excuse for their failure to respond to Ranzy's motion for partial summary judgment. If Defendants needed more discovery before they could respond to Ranzy's motion or file a motion for summary

9

judgment, they should have acted sooner. First, Defendants did not move for an extension of the dispositive motion deadline until the dispositive motion deadline—May 2, 2011. Thus, they left themselves with no options for filing a motion for summary judgment should the court not grant the extension. Second, Defendants claim that they had a discovery dispute with Ranzy stemming from their December 2010 requests for production, but they did not advise the court about this discovery dispute with Ranzy until May 10, 2011—which was *after* the dispositive motion deadline and only ten days prior to the response date for Ranzy's motion. Part of their argument as to why they are so late in filing a motion to file a motion for summary judgment is that the court failed to rule on this dispute until June 2011 and the process for obtaining the documents was "arduous, expensive, and time consuming." Dkt. 119. Defendants knew they did not have these documents long before the dispositive motion deadline. If they needed the documents to file a motion for summary judgment, they had plenty of time to seek the court's intervention *before* the dispositive motion deadline, yet they did not even inform the court about the dispute until ten days after the deadline. Third, Defendants deposed Ranzy in late May 2011—*after* the deadline to respond to Ranzy's motion for partial summary judgment and well after the dispositive motion deadline. There was no need for Defendants to wait until almost the close of discovery to obtain Ranzy's deposition, especially when they knew the dispositive motion deadline was before the scheduled close of discovery.[2] Waiting until the eleventh hour to obtain discovery was Defendants' choice—it is the parties' responsibility to schedule discovery and depositions in order to have the materials they need in the timeframe needed to adequately prepare their cases. This inadequate planning is not a sufficient excuse for failing to respond to Ranzy's motion for partial summary judgment, and it does not show that

---

[2] While Defendants do not provide an excuse as to why they waited so long to obtain Ranzy's deposition, the court understands that Defendants may have attempted to do so before the dispositive motion deadline and Ranzy did not cooperate. However, if Ranzy was unwilling to appear for a deposition in a timely manner before the dispositive motion deadline, it would have been appropriate to seek court intervention by advising the court that Ranzy would not agree to a deposition date and that Defendants needed to complete the deposition before the dispositive motion deadline.

10

Defendants had good cause for failing to file a motion for summary judgment within the dispositive motion deadline.

Moreover, the discovery received after the response deadline did not provide Defendants with any evidence that would have altered the outcome of Ranzy's motion for partial summary judgment, and the evidence is insufficient to convince the court that there is good cause to allow Defendants to file a motion for summary judgment eight months after the dispositive motion deadline. With regard to their response to Ranzy's motion for partial summary judgment, the items Defendants claim they needed that were not within their exclusive control and that they did not receive until after the dispositive motion deadline are (1) Ranzy's deposition; (2) Ranzy's medical records; (3) records relating to Ranzy's other payday loans; and (4) Extra Cash's amended Texas Franchise Tax Public Information Reports. Dkt. 119. As far as the medical records, payday loan records, and Ranzy's deposition, Defendants claim this discovery was necessary to show that Ranzy did not suffer any medical or emotional damages as a result of the CSOA and DTPA violations alleged and that, as such, her motion for summary judgment on those claims should be denied. Dkt. 119. First, the court notes that it deferred ruling on damages, so Defendants will have the opportunity to present their arguments with regard to damages at a later date.[3] *See* Dkt. 118. Second, Ranzy did not argue in her

---

[3] Defendants, relying on *Elston v. Resolution Services, Inc.*, 950 S.W.2d 180 (Tex. App.—Austin 1997, no writ), argue that the court incorrectly granted summary judgment on the CSOA and DTPA claims because there can be no violation of Texas Finance Code section 393.201 unless Ranzy suffered actual damages. Dkt. 119. In *Elston*, the Austin Court of Appeals addressed whether a plaintiff who had not shown he suffered actual damages could recover statutory damages under the former version of Chapter 392, which deals with debt collection. *Elston*, 950 S.W.2d at 183. The current version of Chapter 392 allows consumers to sue for injunctive relief and actual damages "sustained as a result of a violation of [Chapter 392]," and if a person "successfully maintains an action" for actual damages or injunctive relief, the person may recover attorneys' fees and statutory damages. Tex. Fin. Code Ann. § 392.403 (Vernon 2006). The former version is similar. *See Elston*, 950 S.W.2d at 183. The *Elston* court interpreted this section to mean that statutory damages are not available if the person does not prove actual damages. *Elston*, 950 S.W.2d at 183. In *Elston*, the plaintiff had been unsuccessful in his bid for injunctive relief, so the court did not address whether the plaintiff could recover statutory damages if he was successful in obtaining injunctive relief but had not proven actual damages. *Id.* However, the Dallas Court of Appeals addressed this very question in *Marauder Corp. v. Beall*, 301 S.W.3d 817 (Tex. App.—Dallas 2009, no pet.), and it determined that successful maintenance of a suit for an injunction for a Chapter 392 violation gives rise to an award for statutory damages under section 392.403 of the Texas Finance Code. 301 S.W.3d at 823. Here, the court granted summary judgment on Ranzy's claims under chapter 393 of the Texas Finance Code, not section 392. Thus, *Elston* and *Marauder* impact the analysis, but they are not directly on point. Chapter 393 does not even have a statutory damages provision. It allows consumers to apply for injunctive relief for violations of the

motion for partial summary judgment that her damages for the CSOA or DTPA claims were in any way related to her medical or emotional condition. Instead, she stated that her damages were renewal fees charged each time she was unable to pay back her original loan in full. Dkt 103. Ranzy's third amended complaint likewise characterizes the damages for the CSOA and DTPA violations as being in the form of renewal fees.[4] Dkt. 85-1. The only claim for which Ranzy sought summary judgment in which she seeks medical expenses is the FDCPA claim—and the court did not grant summary judgment on that claim. *Id.* While Defendants may have believed they needed the medical records, payday loan records, and Ranzy's deposition to defend against the FDCPA claim, they did not need the information to defend against the other claims, so they certainly could have, and should have, filed a partial response to those claims prior to receiving this discovery—within the deadline.

With regard to the claim that Defendants did not have the amended franchise tax public information report before the response date to Ranzy's motion, the court finds that this information would have been relevant to Ranzy's claim that Edmundo Tijerina is an officer or director of Extra Cash, as the amended report—which Defendants claim they did not receive until August 29, 2011—shows that Eduardo Tijerina, not Edmundo Tijerina, was the president of Extra Cash. Dkt.

---

chapter, and it provides for actual damages, court costs, reasonable attorneys' fees, and a potential award of punitive damages if the consumer is "injured by a violation of this chapter." Tex. Fin. Code Ann. §§ 393.502, 393.503. In its order partially granting Ranzy's motion for partial summary judgment, the court found that Extra Cash violated subsection 393.201 of the Texas Finance Code, and it entered an injunction against further use of the form Extra Cash used with Ranzy, which omitted important information required by the CSOA. Dkt. 118. Whether Ranzy is able to show that she was "injured by a violation of [Chapter 393]" is as yet unknown. But she did show a violation of the chapter and is entitled to the injunctive relief the court granted.

[4] Defendants note that they "strongly object to the Plaintiff's characterization of 'renewal fees' as actual damages" because the fees "are not, in and of themselves, evidence of actual damages." Dkt. 119. They argue that Ranzy's damages, "if any, are the result of [her] inability to pay [her] debts and attempts to collect those debts." *Id.* Then, they go into Ranzy's medical condition, which they claim was preexisting. This is all inconsequential for the purpose of the motion for reconsideration because whether Defendants agree with Ranzy's characterization of her damages or not, she did not seek damages for her medical condition under the CSOA or the DTPA, she sought the renewal fees. So there was no need to go into her medical records in their response with regard to these claims, and the fact that the medical records were not available until after the response date would have caused no prejudice to defendants—if they would have timely responded without the records rather than completely disregarding the deadline. They merely had to present their argument that renewal fees are not damages—a purely legal argument—and point to the lack of evidence relating to medical or emotional damages. The burden of proof was on Ranzy.

12

120-2, Exh. 16. However, Defendants filed the correction on February 14, 2011, and the Texas Secretary of State certified that the certificate of correction had been filed on March 10, 2011. Dkt. 120-2, Exhs. 16, 16b. This was more than two months before the response date for Ranzy's motion for partial summary judgment. Thus, Defendants could have made their argument that Edmundo was not an officer or director of Extra Cash and presented evidence in support of that argument on time. Moreover, even if the Defendants felt they needed the amended certificates to support their argument, the court had not yet ruled on Ranzy's motion for partial summary judgment when they received the amended certificate on August 29, 2011; Defendants could have filed a response, or a motion for leave to file a response, at that time. Instead, they waited until January 2012 to apprise the court of this development.

With regard to Defendants' motion to file a motion for summary judgment, the claims asserted in Defendants' proposed motion either could have been asserted without the documents and depositions or are otherwise grossly untimely. First, Defendants seek summary judgment on Ranzy's usury claims and cite the note, which was available long before the dispositive motion deadline, and affidavits or depositions of Defendants or their employees. Dkt. 120-2. Defendants had access to all of this information before the deadline. Second, Defendants seek summary judgment of Ranzy's claims under the CSOA and DTPA, and they rely on Ranzy's deposition and medical records, which were received after the dispositive motion deadline, to support their claim that Ranzy suffered no damages under the CSOA and DTPA. Dkt. 120-2. However, Ranzy asserts that her damages relating to these claims are the fees she was charged, which is unrelated to her medical or emotional condition. Defendants could have asserted their legal argument with regard to the type of damages required under the CSOA and DTPA prior to the dispositive motion deadline—they did not need Ranzy's medical records to make these arguments.

Third, Defendants argue that the renewal fees are not unlawful under the CSOA, do not constitute a breach of contract, and are not a deceptive trade practice under the DTPA or FDCPA, and they rely on an expert report provided by Robert Wisner to support these claims. Dkt. 120-2. The expert report, which provides a legal opinion with regard to these claims, is dated November 4, 2011. Dkt. 120-2, Exh. 13. Defendants' expert reports were due on March 4, 2011. Dkt. 47. In Defendants' May 2, 2011 motion for modification or extension of the scheduling order, Defendants sought an extension of their expert report deadline until June 24, 2011. Dkt. 105. The court ultimately denied this motion, but even if it had granted the motion, the expert report on which Defendants now seek to rely was filed well after the deadline that Defendants requested. This reflects a complete lack of diligence on the part of Defendants and is an inadequate excuse for an extension of the dispositive motion deadline. Moreover, the expert report simply provides legal analysis; there is no reason why Defendants' counsel could not have conducted the legal research and analysis that is contained in the expert report herself—before the deadlines.

Fourth, Defendants argue in their proposed motion for summary judgment that Edmundo Tijerina cannot be individually liable for Extra Cash's debts because he is not an officer or director of Extra Cash, and they rely on the amended certificate they received in August 2011 showing that Eduardo Tijerina rather than Edmundo Tijerina owned Extra Cash. Dkt. 120-2. However, Defendants filed the correction to the certificate well before the dispositive motion deadline and could have submitted the correction certificate as summary judgment evidence and met the deadline. Moreover, like with the response, Defendants could have moved to file a motion for summary judgment on this issue as soon as they received the amended certificate—in August or early September of 2011—rather than waiting until January 2012.

Finally, Defendants argue in their proposed motion that the court should grant summary judgment in their favor under the FDCPA because Extra Cash is not a "debt collector." Dkt. 120-2.

14

The term "debt collector" does "not ordinarily include creditors who, directly or indirectly, try to collect debts owed them," but it "does include any creditor who, in the process of collecting his debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997). Defendants note that "if Extra Cash did refer to another name this was always used in conjunction with the name 'Extra Cash,'" and they rely on Ranzy's May 2011 deposition testimony as she testified that the person or persons who called or wrote attempting to collect the debt always used the name "Extra Cash." *Id.* This evidence, at most, creates an issue of material fact with regard to Extra Cash's status as a "debt collector" under the FDCPA. Even if the person or persons attempting to collect the debt used the name "Extra Cash," if they used the name in conjunction with another name, it could have given the impression that a third person was attempting to collect the debt. Thus, as the court ruled in its order granting in part and denying in part Ranzy's motion for partial summary judgment, there is an issue of material fact as to this claim. *See* Dkt. 118; *see also* Part III.E, *infra* (clarifying the ruling on Extra Cash's status). Moreover, Defendants knew that the dispositive motion deadline was on May 2, 2011, and if they needed Ranzy's deposition testimony to flesh out arguments relating to whether Extra Cash was a "debt collector" under the FDCPA, they should have noticed Ranzy's deposition sooner. Thus, their receipt of this testimony after the dispositive motion deadline is not "good cause" to allow them to file a dispositive motion at this time.

In sum, Defendants' late receipt of the discovery cited in their motion to reconsider and motion to file a motion for summary judgment resulted either from poor planning on the part of Defendants, was inconsequential to the outcome of Ranzy's motion for partial summary judgment, or was unnecessary for Defendants to file an adequate, timely motion for summary judgment.

15

Accordingly, they have not shown that their failure to file a response and their tardiness in filing their dispositive motion should be excused.

**C.      Court's Extension of Deadlines**

Defendants complain that the court extended the discovery deadline without extending the dispositive motion deadline or their deadline for their response to Ranzy's motion for partial summary judgment. Dkt. 119. On March 31, 2011, Ranzy moved for an extension of the substantive discovery deadline, which was then set on April 1, 2011. Dkt. 94. Defendants were opposed to the extension. *Id.* Thus, if the court had declined to extend the discovery deadline, as the Defendants wanted, discovery would have concluded on April 1, 2011.[5] Defendants did not move, in the alternative, for an extension of the dispositive motion deadline if the court were to grant Ranzy's motion. Dkts. 95, 98. On April 19, 2011, the court granted Ranzy's motion, in part, and provided a brief extension of the discovery period until May 27, 2011. Dkt. 102. Though Defendants now argue that it was unfair for the court the extend the discovery deadline without extending the dispositive motion deadline or the deadline for their response to Ranzy's motion, Defendants did not seek an extension of the dispositive motion deadline until May 2, 2011—the date on which all dispositive motions were due. Dkts. 47, 105. The court was *never* asked to extend the response date for Ranzy's motion for partial summary judgment. Thus, to the extent Defendants argue that the court should have extended the dispositive motion deadline when it extended the deadline for substantive discovery and should have extended its response date for Ranzy's motion for partial summary judgment, the court is not in the business of telling parties how to litigate their cases—if Defendants needed an extension of the dispositive motion deadline, they should have asked for one,

---

[5] The court finds this fact particularly interesting because Defendants now claim that the May deposition of Ranzy was crucial to their case and that they were unable to file summary judgment without that deposition. Yet they were strongly opposed to an extension in the discovery deadline that provided them with the opportunity to depose Ranzy in May.

done so before the deadline was at hand, and provided the court with a good reason for extending the deadline. Since Defendants were opposed to an extension of the discovery deadline as of April 11, 2011 (*see* Dkt. 98), and they knew at this time that the dispositive motion deadline was on May 2, 2011, it makes absolutely no sense for them to now argue that they needed additional discovery in order to file a dispositive motion on May 2, 2011. And it makes even less sense for them to argue that the court should have somehow divined that they were going to need more time to file a response to Ranzy's motion for summary judgment because the discovery deadline was extended, when they did not want more discovery in the first place.

**D.     Confusion Over the Cancellation of Docket Call and Termination of Deadlines**

On August 1, 2011, which was three months after Ranzy filed her motion for summary judgment and more than two months past Defendants' deadline to respond, the court terminated all deadlines and cancelled docket call pending rulings on the outstanding motions. *See* Dkt. (Aug. 1, 2011). The outstanding motions included Defendants' motion for leave to file a more definite statement, motion for extension of time, motion reurging the motion for an extension of time, Ranzy's motion for partial summary judgment, and Ranzy's motion for class certification. Dkts. 84, 103, 104, 105, 108. Defendants claim that this termination of deadlines caused "confusion over deadlines related to the Defendants' Response to the Summary Judgment" and that this unfairly prejudiced Defendants. Dkt. 119. The purpose of the August 1, 2011 docket entry cancelling deadlines was to cancel docket call, which was scheduled for August 26, 2011, since the court had not yet ruled on the motions and the disposition of many of the issues contained in these outstanding motions would have a substantial impact on trial preparation. The response dates for *all* outstanding motions had passed months prior to this docket entry. The terminated deadlines related to the joint pretrial order and objections to witness lists and exhibits, which were to be filed by August 12, 2011, and August 19, 2011, respectively, and were no longer necessary since docket call was cancelled.

17

*See* Dkt. 47 (Agreed Scheduling Order). If Defendants were confused about this, they simply needed to call the Case Manager or send a letter to the court seeking clarification.

Defendants also complain that when the court granted, in part, their motion to file a motion for a more definite statement, the court allowed Ranzy to respond to the motion but did not provide Defendants with the opportunity to reply. This is incorrect. The court's order granting, in part, Defendants' motion instructed Ranzy that she must respond within 20 days of the order. It did not preclude Defendants from filing a reply. The court's procedures specifically state that "reply briefs filed by movants will be considered if submitted before the court rules on the motion. Generally, reply briefs should be submitted within five (5) days after the non-movants' response to the motion is filed." Judge Miller's Procedures 6.A.4, *available at* http://www.txs.uscourts.gov/district/judges/ghm/procedures.htm. Even if Defendants were confused because the court terminated deadlines on August 1, 2011, the court procedures clearly state that reply briefs will be considered if received before the court rules on the motion; thus, there is, in effect, no deadline if the court has not yet ruled. Moreover, even if Defendants did not understand this rule, they could have filed a motion seeking leave to file a reply. They did not.

In sum, any confusion experienced by Defendants relating to the cancelled deadlines or their ability to file a reply to Ranzy's response to their motion for a more definite statement was unjustified and does not provide a sufficient excuse for failing to respond to Ranzy's motion for partial summary judgment and for missing the dispositive motion deadline months before.

E.   **Extra Cash's Status as a Debt Collector Under the FDCPA**

The court held in its order partially granting Ranzy's partial motion for summary judgment that Ranzy had not met her burden of showing that Extra Cash was a debt collector under the FDCPA. *See* Dkt. 118 at 20. However, on page 15 of the order, the court stated, "Finally, the court finds Ranzy is a consumer, and Extra Cash a debt collector, under the FDCPA." *Id.* at 15. This

18

sentence was erroneously included in the order. There is clearly a question of fact with regard to Extra Cash's status under the FDCPA that will need to be determined by the trier of fact. Accordingly, Defendants' motion to reconsider is GRANTED to the extent it seeks clarification of this issue.

### IV. CONCLUSION

Defendants' motion for reconsideration (Dkt. 119) is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Defendants' request that the court clarify its holding with regard to Extra Cash's status under the FDCPA. There is a question of fact with regard to whether Extra Cash is a debt collector under the FDCPA. Defendants' motion to reconsider is DENIED in all other respects. Defendants' motion to file a motion for summary judgment (Dkt. 120) is likewise DENIED. This case is now ripe for trial. The parties shall contact the court's case manager upon receipt of this order to schedule a trial date.

It is so ORDERED.

Signed at Houston, Texas on March 22, 2012.

_____
Gray H. Miller
United States District Judge